## SMITH v. BOARD OF COUNTY COMMISSIONERS OF JEFFERSON COUNTY.

1. The statutes vest in the county superintendent of schools a large discretion as to the services necessary to be performed by him in the discharge of his official duty.

2. When he renders to the board of county commissioners an account of his services and mileage for a month or a quarter of a year, made out and verified as the law requires, he has established a *prima facie* case in his favor. No authority exists to reject any item or charge upon inspection merely, unless it clearly appears therefrom that such item is incorrect or illegal.

3. Courts are not disposed to interfere with the exercise of mere discretionary authority.

4. Every reasonable intendment is to be made in favor of the acts of public officers, who are sworn to perform their official duties correctly, so long as they appear to be acting in good faith, with due care and discretion, and within the limits of their conceded powers.

5. The law does not recognize fractions of days. And when it provides a *per diem* compensation for the time necessarily devoted to the duties of an office, the officer is entitled to his daily compensation for each day on which it becomes necessary for him to perform any substantial official service, if he does perform the same, regardless of the time occupied in its performance.

6. Under the statute the accounts of the county superintendent of schools should be kept in such a manner that the officer may not only be able to itemize his accounts as required, but to explain them as well, if called upon to do so.

### *Appeal from District Court, Jefferson County.*

APPELLANT was county superintendent of the schools of Jefferson county in the year 1886. He rendered to the board of county commissioners on April 5th of said year his account for services and expenditures for the months of January, February and March, amounting in the aggregate to the sum of $465.25. The county commissioners allowed upon said account the sum of $330.65, and rejected the balance. Thereupon said officer appealed from the decision of said board to the district court of Jefferson county, and upon trial of the cause before said court, without a jury, his recovery was still

further reduced to the sum of $310.65. From the latter judgment he has prosecuted an appeal to this court. The errors assigned relate to errors of law alleged to have been committed by the district court in disallowing legal and proper items of appellant's account.

Mr. L. S. SMITH, for appellant.

Mr. JOSEPH MANN, for appellee.

BECK, C. J.    The findings of the district court disclose that certain items of the appellant's account were rejected because not deemed proper charges against the county; that other items were not duly proven, and that certain charges were not itemized as the statute requires. The correctness of these rulings is questioned in the present proceeding, and since the question raised by the assignments of error involve a construction of sections 3015 and 3020, pages 884 and 885, General Statutes, we here insert those sections:

"Sec. 3015. It shall be the duty of the county superintendent to exercise a careful supervision over the schools of his county; to visit each school at least once each quarter it is in session; to see that all the provisions of this act are observed and followed by teachers and school officers; to examine the accounts of the district officers, to see if such accounts are properly kept, and all district funds are properly accounted for; to keep, in a good and substantial bound book, a record of his official acts, and of other matters required by law to be recorded; to obey the legal instructions of the state superintendent; and to exhibit his books, and report the financial condition of his office, to the board of county commissioners on or before the first Monday in July in each year, and shall cause the same to be published in some newspaper of his county on or before the close of the school year."

"Sec. 3020. For the time necessarily spent in the discharge of his duty he shall receive $5 per day, and fif-

teen cents for each mile necessarily traveled. He shall, as far as practicable, render an itemized bill of his services and mileage each month or quarter to the board of county commissioners, and shall make oath that the bill is just and correct, whereupon the county commissioners shall order a warrant on the county treasurer, payable from the general county fund: provided, that the annual salary so received shall in no case exceed $100 for each regularly organized public school in the county. The commissioners shall provide him with a suitable office at the county seat, and all necessary blank books, stationery, postage, expressage and other expenses of his office not otherwise provided for, which last-mentioned expenses shall be paid for from the county fund. And no person shall hereafter be eligible to the office of county superintendent of schools who is not a person of culture and practical experience and learning in those branches of education taught in the public schools, as provided in this act, and a person of good moral character."

The foregoing and other provisions of the statute vest in the county superintendent of schools a large discretion as to the services necessary to be performed by him in the discharge of his official duty. In regard to his compensation and traveling expenses, a proper construction of the statute is that, when he renders to the board of county commissioners an account of his services and mileage for a month or a quarter of a year, made out and verified as the law requires, he has established a *prima facie* case in his favor. No authority exists to reject any item or charge upon inspection merely, unless it clearly appears therefrom that such item is incorrect or illegal. Where a question of discretion is involved, neither the discretion of the county commissioners nor that of the court can be substituted for the discretion vested by the statute in this officer. It is only upon due proof of an abuse of his official discretion, or of errors apparent from inspection, or established by proof, that jurisdiction exists to reject items of an account so rendered.

Counsel for the board of commissioners call attention to the fact that the appellant has charged the *per diem* allowed by statute, for every secular day of the quarter ending March 31, 1886. He also lays down the proposition that it could not have been the legislative intent that this officer should receive $5 per day for every day during his term of office, irrespective of the amount of services rendered. The argument is, if such had been the legislative intent, a stated salary, instead of a *per diem* compensation, would have been provided. There is force in this proposition and reasoning. In consequence of the unequal distribution of the population of the state throughout its several counties, more time must necessarily be devoted to the duties of this office in counties having a dense population and numerous schools than in counties sparsely settled and having few schools. These considerations were evidently before the minds of the law-makers when legislating upon this question. They probably led to the insertion of the provision concerning the compensation of such officer, that, "*for the time necessarily spent in the discharge of his duty, he shall receive $5 per day, and fifteen cents for each mile necessarily traveled.*" Honestly observed and obeyed, this provision would graduate the compensation of all county superintendents according to the service *necessarily* rendered by each. It must be conceded, however, that the intent of the statute is not capable of strict enforcement by means of judicial proceedings. Where an officer is clothed with a general supervisory power over the entire subject-matter pertaining to his jurisdiction, and, in addition to specific duties enjoined, is required to exercise a careful supervision over the affairs committed to his trust throughout his territorial district, it is only upon clear proof of bad faith or of an abuse of discretion that his official acts can be ignored or rejected as having been performed without authority of law. Courts are not disposed to interfere with the exercise of mere discretionary authority. Every reasonable intendment is to be

made in favor of the acts of public officers, who are sworn to perform their official duties correctly, so long as they appear to be acting in good faith, with due care and discretion, and within the limit of their conceded powers. 7 Bac. Abr. 313; Sedg. St. & Const. Law, 329.

In the present case the officer is authorized and required by the statute to see that all the provisions of the school law are observed and followed by teachers and school officers. He is likewise required to exercise a careful supervision over the schools of his county. These are discretionary powers, and can neither be abridged nor controlled by either the county commissioners or the courts. While honestly administering the affairs of his office, his discretion and judgment must determine the services necessary to be rendered in furtherance of the interests of the schools of his county, and not the discretion or judgment of the county commissioners or the courts. Appellee's counsel thinks this construction of the statute opens the door for the perpetration of frauds by school superintendents upon the people. It is a sufficient answer to this suggestion to say that proof of fraud, in connection with any official acts of the superintendent, will operate to nullify his discretionary powers *pro tanto*, and to invest the tribunals mentioned with jurisdiction over such acts. This is also true as to charges for services rendered outside of his jurisdiction, and to mistakes and errors committed by him.

The foregoing principles determine most of the questions raised by this appeal. The account forming the subject-matter of the litigation is made up of charges for the performance of duties specifically enjoined by the statute, and charges for services rendered by the appellant in the exercise of his discretionary authority. We find no evidence of bad faith, of any attempt to commit frauds, or of any abuse of discretion. Among the rejected items of his account are charges for official correspondence with teachers, school officers, and others, all

pertaining to school affairs. These services constitute legitimate office work, and entitle the appellant to compensation therefor. This mode of transacting business affairs is employed, to some extent, in nearly if not all the departments of business, and we perceive no reason why it should not be as efficient in the administration of school affairs as in other departments of business.

The superintendent, as a witness on the trial below, testified to his good faith in rendering these services, and in charging his *per diem* therefor; that the whole business thus transacted justified the aggregate *per diem* charges included in the account rendered; that he never tried to make the work cover more time than was necessary for its transaction; that the average number of letters necessary to be written per day was from three to four, and his practice was to make no *per diem* charge for official correspondence unless it occupied at least one hour of his time. No separate charge was made for these services when there were other duties to perform.

In this connection counsel for the appellee asks for an opinion "as to what length of time will constitute a day's service for the superintendent." We answer, the law does not recognize fractions of days; and, when it provides a *per diem* compensation for the time necessarily devoted to the duties of an office, the officer is entitled to this daily compensation for each day on which it becomes necessary for him to perform any substantial official service, if he does perform the same, regardless of the time occupied in its performance. / An effort to stretch out the officer's official. work from day to day, in order to charge for a greater number of days than was necessary, appears from the testimony not to have been done in any instance in the present case.

Another question submitted in the same paragraph is, Has the superintendent the right to hold an examination of teachers on other and different days than the days specified in the statute? Can he continue the examina-

tion *ad libitum?*  One of the specific duties prescribed by
the statute is that the superintendent shall meet all per-
sons desirous of passing examinations as teachers on the
last Friday of February, May, August and November in
each year, and examine them as to their qualifications to
teach.   If these examinations cannot be completed on
the days named in the statute, there exists no legal ob-
jection to their completion on other days.  The law would
not sanction the continuance of such examinations longer
than is reasonably necessary for their completion; but
the superintendent is vested with authority, outside of
this particular section of the statute, to examine a teacher
as to qualifications whenever such service becomes nec-
essary.

Another rejected item was the charge made by the
superintendent for examining into the complaint of
Rogers, that the teacher of school district No. 7 would
not allow his children to attend school, and for putting the
matter in the way of a speedy settlement.  The objection
made was that it was a matter for the board of directors
to act upon in the first instance.   No objections appear
to have been made by the parties, or by the school board,
to the action taken by the superintendent; and, his action
appearing to have been efficient in the settlement of the
difficulty, we think the charge correct.

In regard to the items of January 6th and March 4th
(visits to the state superintendent at Denver and mileage),
we are of the opinion that the first item should have been
allowed.   The statute requires the county superintendent
"*to obey the legal instructions of the state superintendent.*"
The business requiring this consultation appears to have
related to some difficulty which had arisen about a joint
school district, lying partly in Jefferson county and partly
in Park county.   A personal interview with the state
superintendent appears from the testimony to have been
necessary to the adjustment of the affairs of this joint
district.   The appellant, therefore, was entitled to recover

both his *per diem* and mileage.  Concerning the trip to Denver on March 4th, for school supplies, a different ruling must be made, for the reason that the testimony of the appellant, when sworn as a witness in his own behalf, showed the trip to Denver to have been unnecessary. Outside of this item his *per diem* charge was correct, however, for he testifies to the performance of six hours of other official work on the same day.  But the traveling expenses were, for the reasons given, an erroneous charge.

Concerning the manner of keeping his accounts, the statute itself is sufficiently specific, and should be obeyed. The statute requires the superintendent, *as far as practicable*, to render an itemized account of his services.  His accounts should therefore be kept in such a manner that the officer may not only be able to itemize his accounts as required, but to explain them as well, if called upon to do so.  The account presented in the present instance is faulty in some particulars, but, considered in connection with appellant's testimony, is deemed sufficient.

For the reasons given, we are of opinion that the judgment of the district court should be reversed, which is accordingly done.  Judgment reversed, and the cause remanded.

*Reversed.*