CITY OF DENVER v. PEARCE.

1. CONVEYANCE OF LAND DESCRIBED IN DEED AS BOUNDED BY UNNAVIGABLE STREAM — CONSTRUCTION OF DEED. — A deed which describes the land conveyed as bounded by an unnavigable stream conveys the title *prima facie* to the thread of the stream, or as far as the grantor owns.
2. SAME — WHEN FOREGOING RULE DOES NOT PREVAIL. — Where the probate judge, in pursuance of the provisions of Session Laws of 1872, page 191, relating to town-site lots in Denver, advertises and sells a lot bounded on an unnavigable stream, and on the same day and as part of the same sale sells the bed of the stream to another person, the deeds for the two parcels being executed the same day and containing the same recitals, the intention thus shown to separate the ownership of the bed of the stream from the ownership of the lot will overcome the presumption that a deed to a lot bounded on an unnavigable stream carries the title to the bed of the stream to its center.

*Appeal from District Court of Arapahoe County.*

THE plaintiff, Richard Pearce, alleges in his complaint, which was filed April 2, 1884, that he was then, and for

a long time had been, seized in fee of a parcel of land situated in the city of Denver, described as follows: "All that certain piece of land lying between the western line of lot numbered nine (9) and Cherry creek and the northern line of Lawrence street, in the block numbered seventy-one (71), in the east division of the city of Denver, excepting a strip adjoining the said lot 9, in said block 71, which is four feet in width, fronting on Lawrence street and extending back of equal width to the full depth of said lot 9."

He further alleged peaceable and undisturbed possession of the premises described, and the erection and occupation of valuable improvements thereon; that defendant claimed some interest in the premises, and had advertised to sell the same. He prays that he may be adjudged to be the owner of said premises, and that the western boundary thereof be declared to be "the thread of the stream in Cherry creek," and that defendant be enjoined from asserting any right, title, interest or claim in the premises, etc.

The defendant denied each and every allegation of the complaint specifically, and alleged ownership of the premises in fee-simple, and the right to the immediate possession thereof.

The case was tried to the court, and resulted in a judgment in favor of the appellee, declaring him to be the owner of the premises described, and that the westerly boundary of said tract "is the thread of the stream in Cherry creek, subject to the perpetual right of the defendant and the public to the use of said stream for the flowage of its natural waters and to remove obstructions from the body thereof," etc. From this judgment, appellant, the city of Denver, appealed to this court.

Mr. James H. Brown, Mr. John T. Shafroth and Mr. M. B. Carpenter, for appellant.

Mr. John L. Jerome, for appellee.

PATTISON, C.	The issue between the parties in this case involves the title to so much of the premises above described as lie between the easterly bank of Cherry creek and the thread of the stream. No other question is discussed by counsel. The solution of this question requires consideration of the history of the title to the premises, and a construction of the conveyances under which the parties claim. This history must be looked for, not only in the evidence and in the deeds of conveyance set forth in the record, but also in the statutes of the United States and of this state relating to town-sites, which were in force at the time the deeds were executed and delivered. The first enactment of congress was approved May 23, 1844, and was entitled "An act for the relief of the citizens of towns upon the lands of the United States, under certain circumstances." This act provided for entry, under the laws of the United States, by the corporate authorities, or, if not incorporated, by the county judge of the county in which the town was situated, of any portion of the surveyed public lands occupied as a town-site, in trust, for the use and benefit of the occupants thereof. It was provided that the execution of the trust should be under regulations to be prescribed by the legislative authority of the state or territory in which the town was located. Laws 1844, p. 12. May 28, 1864, by an act entitled "An act for the relief of the citizens of Denver, in the territory of Colorado," the act last cited was so extended as to "authorize the probate judge of Arapahoe county, in the territory of Colorado, to enter at the minimum price, in trust for the several use and benefit of the rightful occupants of said land, and the *bona fide* owners of the improvements thereon according to their respective interests," certain legal subdivisions of land, which are particularly described in the act. Laws 1864, p. 94. Pursuant to this act, James Hall, then probate judge of Arapahoe county, entered at the land-office in Denver the lands described in the act.

By an act of the legislature of Colorado territory, approved March 11, 1864, the conduct of the trustee in the execution of the trust was regulated and prescribed. Sess. Laws 1864, p. 139. Section 4 of that act provided "that each and every person or association claiming any portion of said lands should make a statement in writing, within a specified time designated, describing the lands claimed, and their specific right or interest therein." This section further provided that "all persons failing to sign and deliver such statement within the time specified in this section shall be forever barred the right of claiming or recovering such lands, or any interest or estate therein, or in any part, parcel or share thereof, in any court of law or equity." Under the provisions of these several legislative enactments, James Hall, as probate judge, and his successors in office, undertook the execution of the trust. In 1872 the trust remained unexecuted in respect to many parcels of land, including the premises in controversy in this action. By an act of the legislature approved February 8, 1872, provision was made for the sale of all town lots, or the parcels of land which had not theretofore been sold. Sess. Laws 1872, p. 191. By the provisions of this act the probate judge was required to make "a list of all town lots or parcels of land * * * to which no person, association of persons, or body corporate, except the city of Denver, filed any claim with the probate judge of said county on or before the 9th day of August, 1865." By the sixth section of the act he was further required "to give ten days' previous notice, in a daily newspaper published in said city, of the time when he would commence making such list." By the second section he was required, "immediately upon the preparation of said list, to advertise said lots and lands for sale, in some newspaper published in said city, for sixty days, at public vendue, to the highest bidder, for cash in hand." Section 4 provided for the execution and delivery of deeds to the purchaser or pur-

chasers of the lots or lands sold by virtue of the act. Pursuant to the provisions of this act, Henry A. Clough, probate judge, in the month of October, 1872, sold and conveyed to the grantor of appellee the premises above described, for the sum of $21. The several statutes above mentioned, and the steps taken under them in the execution of the trust, are recited in the deed of conveyance. The deed bears date October 18, 1872; was acknowledged November 1st, and recorded November 7, 1872. Upon the same day, pursuant to the same statute, in execution of the same trust, and at the same sale, Clough sold and conveyed to the appellant, for the sum of $5,050, a parcel of land described as follows: "The whole of the bed of Cherry creek, as the same is marked and defined on the map of said city, as per survey of F. J. Ebert, from the point where the same intersects the south line of the old bed of the South Platte river, to the point where the same intersects the south line of said section 33, save and except such parts and parcels thereof as may have been heretofore deeded by any probate judge since the entry of said land in trust as aforesaid, and save and except parcels of land eighty feet in width connecting the following streets in East and West Denver," etc. The exceptions need not be recited. This deed was dated October 18, 1872; was acknowledged October 30th, and recorded October 31, 1872, and contains the same recitals as the deed to appellee's grantor. It appears from the evidence that the notice of sale in which both of the parcels of land were mentioned was read before the sale. Both deeds designate the lands conveyed as a portion of the land described in the notice. The rights of the parties in the premises depend entirely upon the legal effect to be given to these conveyances. The question in the case is one of construction.

The inference is clear that the probate judge intended to convey, and appellant intended to acquire, all of the bed of Cherry creek which had not theretofore been con-

veyed. To acquire control of the bed of Cherry creek, as defined by the Ebert survey, had long been the settled policy of the municipal authorities. This policy is clearly disclosed by the record, and by the statutes which were in force at the time this sale was had. By an act approved February 10, 1865, the city was authorized to "define and fix the boundaries of the channel of Cherry creek within the corporate limits of the city; to remove obstructions therefrom; and to prevent persons from obstructing the same." Pursuant to this act, and on June 22, 1865, by formal resolution, the plat of the city made by F. J. Ebert was approved and ordered to be filed for record in the office of the recorder of Arapahoe county. By an ordinance thereafter enacted the channel of the bed of Cherry creek, within the corporate limits, was declared to be a public place; and it was further declared to be "unlawful to place any wall, building, fence, dike, earth, manure, garbage or other obstruction in or upon the same." By an act of the legislature approved February 9, 1872, it was provided that "the said city council shall have power and authority to condemn, and appropriate in fee to the use of the city, the strip of land within the bed of Cherry creek, as defined by the city council. * * *" Sess. Laws 1872, p. 207. In the light of the statutes, resolution and ordinance cited, it is clear that appellant intended to purchase the bed of Cherry creek for the benefit of the public. It is equally clear that it was the intention of the trustee, at the time the sale was made, to convey to the city all of the bed of the stream, title to which remained in him. It follows that the trustee must have intended to convey to appellee's grantor a parcel of land bounded, not by the thread of the stream, but by the bank, as defined by the Ebert survey. Can effect be given to this intention by a construction of the deeds which will not violate settled principles of law?

In this connection the first question suggested is, at

what time did these deeds take effect? The deeds bear date the same day. In the absence of evidence to the contrary, it is an elementary principle that deeds and other written instruments shall take effect as of the day of their date. Appellee was permitted to prove that the bed of Cherry creek was sold last. This evidence was objected to by appellant's counsel; but the objection was overruled, and the evidence admitted in support of the description. The theory of counsel appears to have been that he could show by parol that the deed to appellant did not convey the portion of Cherry creek in question, because expressly excepted from its operation by the following language: "Except such parts and portions thereof as may have been heretofore deeded by any probate judge," etc. The theory is clearly a mistaken one. Upon inspection of the deed it is apparent that this exception had no relation whatever to lands which were deeded pursuant to the sale. The evidence was immaterial, except perhaps as it might bear upon a question suggested by some of the authorities cited by appellee's counsel; that is, whether the case is one in which the law should regard fractional parts of a day. The question is not discussed by counsel, and allusion is made to it here in response to the suggestion contained in the authorities cited, as above stated, and for no other reason. If considerations of the relations of the parties to each other and to the premises in controversy could be disregarded, and the construction of the deeds was dependent solely upon the order of the sale of these parcels of land, then, as the deeds bear the same date, the question might become important. Generally speaking, the law regards the day in its entirety, and will not take cognizance of any fractional part thereof. The rule is stated in *Louisville v. Bank*, 104 U. S. 469, as follows: "When necessary to determine conflicting rights, courts of justice will take cognizance of the fractions of a day." Mr. Justice Lawrence, in *Grosvenor v. Magill*, 37 Ill. 239,

says: "It is true that for many purposes the law knows no division of a day; but, whenever it becomes important to the ends of justice, or in order to decide upon conflicting interests, the law will look into fractions of a day as readily as into the fractions of any other unit of time. 2 Bl. Comm. 140, notes. The rule is purely one of convenience, which must give way whenever the rights of parties require it." *Smith v. Jefferson Co.* 10 Colo. 17. Assuming this definition to be consonant with sound reasoning, it is certain that the ends of justice can never require that the law depart from the ordinary rule, and recognize a fraction of a day, to defeat the manifest intention of the parties. As has already been said, the intention of the parties is clearly established by the record.

For the purpose, therefore, of construing these deeds, their date may be considered as the time when they went into effect; and, as they were dated the same day, they must be deemed to have taken effect at the same time. Upon the oral argument it was contended that, as appellant's deed was first acknowledged and recorded, it must be deemed to have taken effect first. The time of record is not significant, because appellee's grantor does not appear to have been a subsequent purchaser, within the meaning of the statute. It is undoubtedly true, however, that title does not pass until the deed is actually delivered. The deed to appellant was acknowledged October 31st; that to appellee on November 1st. It has been held that, in the absence of other evidence, there is no presumption of the delivery of a deed prior to the acknowledgment. *Blanchard v. Tyler*, 12 Mich. 339. It is not necessary to the decision of this case, however, to pass upon this question. It is sufficient to hold that the deeds took effect at the same time. They must therefore be considered together.

The question of the construction of the deeds will now be considered. "In construing deeds, courts endeavor

to place themselves in the position of the parties at the time of the conveyance, in order to ascertain what is intended to be conveyed." Tied. Real Prop. § 828. This is elementary. It is also an elementary principle that "in the case of non-tidal waters, also, a deed which describes the land as bounded by the water conveys, *prima facie*, as far as the grantor owns." Gould, Waters, § 196. In this case, therefore, as the title to the premises in controversy was vested in Clough as trustee, the description contained in the deed to appellee's grantor *prima facie* carried the boundary to the thread of the stream. In descriptions of this nature the stream is the monument, and the thread of the stream the boundary. The language of the description, however, is but *prima facie* evidence that the grant or deed is intended to convey all that the grantor owns. It is but a presumption. Whether this presumption shall prevail is in all cases to be determined by a consideration of the language used by the parties, and such surrounding circumstances as are proper to be considered in ascertaining their intention. *Buck v. Squiers*, 22 Vt. 484. In *Dunham v. Williams*, 37 N. Y. 251, it is held that "a deed bounded on a highway *prima facie* carries the title of the grantee to the center of the road, on the assumption that the grantor owned it, but, if it appear to have been owned by another, the terms of the deed are satisfied by a title extending only to the road-side." In the course of the opinion in this case, Porter, J., says: "The presumption in favor of an adjacent proprietor, and of his successors in interest, is not a *presumptio juris et de jure*, but yields to other evidence, displacing the grounds upon which it rests. The effect, in this respect, of a given deed depends on the actual state of the title." Applying the principle above stated to the case at bar, it is clear that the effect to be given to the deed relied on by appellee depends upon the state of the title to the bed of the stream at the time the deed was made. By a deed

shown to have taken effect at the same moment of time of which appellee's grantor must be assumed to have had notice, the bed of the stream was conveyed to appellant. Its effect upon the rights of the parties is the same as if it had been made long prior. It cannot be contended that, if the bed of Cherry creek had been sold and conveyed prior to this time, the description of the deed relied upon by appellant would not, in the language above cited, be "satisfied by a title extending to" the bank of the stream. In *City of Chicago v. Rumsey*, 87 Ill. 348, it is held: "Notwithstanding the general presumption that a conveyance of land bounded on a street or highway carries the fee in the street or highway to the center thereof, the owner may convey the adjoining land without the soil under the street or highway. It is but a presumption that may be rebutted by circumstances inconsistent with it." *Stolp v. Hoyt*, 44 Ill. 219; *Rockwell v. Baldwin*, 53 Ill. 20; *Mott v. Mott*, 68 N. Y. 246.

Again, that it is competent for an owner of land bounded upon an unnavigable stream to divide the bank from the bed of the stream is well settled. *Smith v. Ford*, 48 Wis. 116–164, 2 N. W. Rep. 134, 4 N. W. Rep. 462; *Norcross v. Griffiths*, 65 Wis. 599, 27 N. W. Rep. 606. This the probate judge intended to do by the sale made under the act of 1872. The bed of Cherry creek was divided from the parcels of land bounded by the stream, and described separately in the notice of sale; sold separately at the sale; and was intended to be separately conveyed. The deeds must be so construed as to give effect to this intention. The presumption, based upon the language of the description, upon which appellee relies, must be deemed to be overcome by the proof of circumstances inconsistent with it, within the meaning of the authorities cited. The westerly boundary of appellee's land must therefore be held to be the easterly bank of Cherry creek, as defined by the Ebert survey, and not the thread of the stream. The judgment is reversed, and

the cause remanded with instructions to enter a decree in conformity with this opinion.

RICHMOND and REED, CC., concur.

PER CURIAM.   For the reasons stated in the foregoing opinion the judgment of the court below is reversed.

*Reversed.*

MR. JUSTICE ELLIOTT, having presided at the trial in the court below, did not participate in this decision.