### [No. 3612.]
### HANLON ET AL. v. HOBSON.

1. TOWN SITES—TRUSTEE'S DEED—COLLATERAL ATTACK.

A conveyance by the trustee under the town site laws is not open to collateral attack by one who, at the time of its execution, was not an occupant of the land nor a beneficiary of the trust.

2. SAME—EVIDENCE.

Parol evidence is admissible to identify the land mentioned in the deed of a trustee under the town site acts.

3. SAME—BOUNDARIES.

When the tract of land granted is described as bounded by a nonnavigable stream, the middle or thread of the stream is the true boundary.

4. The facts of this case, *held* to bring it within this rule.

*Error to the District Court of Pueblo County.*

Mr. JOHN R. DIXON, for plaintiffs in error.

Mr. J. H. McCORTLE, for defendant in error.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

The plaintiff below (defendant in error here) brought his action for the recovery of the possession of certain real property. To the judgment rendered for the plaintiff and against them, the defendants below prosecute this writ of error.

The land in dispute is included within the original town site of the city of Pueblo, entered, in 1869, by the probate judge of Pueblo county under the provisions of the act of congress of March 2, 1867, for the relief of the inhabitants

of cities and towns upon the public domain.  It consists of two parcels, one lying on the east, and the other on the west, side of what was, at the time of the entry, the Arkansas river.  Since then, by a change of its location, the river flows in another channel.  The old bed thereof is the subject of this controversy.

Through a deed of conveyance to J. G. Robinson, executed by the probate judge in pursuance of the town site act and laws of the then territory of Colorado passed in pursuance thereof, and by divers *mesne* conveyances from Robinson down to the plaintiff, the latter claims title to the parcel on the west side of the river; and by a deed to Joseph Abrahams, executed by the same authority, and by divers deeds from Abrahams to him, the plaintiff claims title to the parcel east of the river.  These two titles became vested in the plaintiff, and as they were respectively bounded, as it is said, by and on the river, the position assumed by the plaintiff is that each tract extended to the thread, or center, of the river, and therefore that he now owns the old bed.

The errors relied upon and argued by counsel for plaintiffs in error sufficiently explain their position.  They are, *first*, that the deed from the probate judge to Robinson is absolutely void upon its face; *second*, that a proper construction of the Robinson and Abrahams deeds will not include the bed of the river; *third*, that if any part of the bed of the river did pass to Abrahams, it did not pass to the plaintiff below, since in the deed from Abrahams the latter expressly excluded it.

The plaintiffs in error were not occupants of the town site at the date of entry.  They do not deraign title directly from the probate judge, or through any one who was a beneficiary under the trust conferred upon that officer.  Nor do they assert a title superior or adverse to that emanating from him. They are what is popularly known as "squatters."  In view of these admitted facts, plaintiffs in error are precluded from raising to the acts of the probate judge in the execution of his trust many of the objections which are argued in their

brief.   See *Murray v. Hobson,* 10 Colo. 66; *Mills v. Hobson,* 10 Colo. 78; *Anderson v. Bartels,* 7 Colo. 256; *Chever v. Horner,* 11 Colo. 68; *Smith v. Pipe,* 3 Colo. 187; *Colo. Cent. R. R. Co., v. Smith,* 5 Colo. 160; *Cook v. Rice,* 2 Colo. 131; *Pueblo v. Budd,* 19 Colo. 579; *Laughlin v. City of Denver, ante,* p. 255; 50 Pac. Rep. 917.

Counsel for plaintiffs in error on the trial below made the following concession: "Defendants' counsel concede that the property in controversy is included within the grant to Mark G. Bradford (then the probate judge) from the United States, and if the deed from Hepburn (then probate judge) to Robinson for the tract west of the river, and from Hepburn to Abrahams for the tract east of the river shall be permitted to be located apart from the original plat of the property referred to in said deeds, that said deeds, if they shall be construed to extend to the thread of the river by the court, will include the property in controversy."

This court, in *Murray v. Hobson, supra,* citing *Pipe v. Smith,* 4 Colo. 444, has held that parol evidence was admissible to identify the land described in this deed.   The only question, therefore, under the foregoing concession would seem to be whether the deeds in question are to be construed as extending to the center of the river the boundaries of the lands therein described.   But it is said by counsel that under all the authorities, if the deed of the probate judge is void upon its face, advantage thereof may be taken by one not a beneficiary of the trust, even in an action at law.   Upon the contrary, it is strenuously contended by defendant in error that under the admitted facts of this case, in the light of the authorities cited, that mere interlopers are not in a position to raise this question.   But if we assume that they are, let us examine this deed to see if the contention is sound.

1. The charge that the deed is void upon its face is predicated among other things, upon the assumption that there are two descriptions therein, and that the so-called first description upon its face affirmatively shows that at the time of the deed from the probate judge no one was the actual occu-

pant of the land, but that it was subsequently entered upon by the grantee in that deed. This same instrument was before this court for construction in *Murray v. Hobson, supra,* and it was there held that there was but one description in it, and that what counsel there, as here, call the "first" description constituted merely the first portion thereof, and indicated only the *situs* of the vacant tract, while the latter portion limited its extent and defined its boundaries.

This being true, and it being also true as laid down in the authorities already cited, that parol evidence is admissible for the purpose of locating this land apart from the alleged original plat, the description contained in the deed is attended by no such results as is contended for here. The language of the instrument is fully set out in the case already cited, and without further comment we content ourselves with referring to that decision which is squarely against the position attempted to be maintained by plaintiffs in error upon this first proposition.

2. A most elaborate and ingenious argument by counsel for plaintiffs in error is made under the second assignment of error to show that the common-law "thread of the stream" rule does not apply to deeds made by probate judges under the town site act; and that by analogy to the doctrine prevailing in this state respecting the right of the people to the waters of public streams, and to divert and use the same, which is contrary to the common-law doctrine of riparian ownership, the rule here should be that the bed of nonnavigable streams, as well as the waters, belong to the public. Hence that private individuals by a grant from the United States government, or, as in this case, from its trustee, may not, as against the state, acquire title to the bed of natural streams, and as a logical sequence therefrom, that the "thread of the stream" rule is abrogated.

We are not impressed with this argument; and are satisfied that its unsoundness might readily be demonstrated upon principle. We might answer by saying that the state is not making any claim to the old river bed, and that, where

the controversy concerning its ownership is between one who holds the legal title from the United States government and one who has only a squatter's right, the latter, in an action at law, is in no position to assert any right the state may have. But we are relieved from either necessity, as this court in the case of *Denver v. Pearce*, 13 Colo. 383, has held that under the town site act the probate judge held the legal title to the bed of a nonnavigable stream, and that he might convey its bed to one grantee, and the lands bordering thereupon to another. In the opinion we find the following:

" In this case, therefore, as the title to the premises in' controversy was vested in Clough (probate judge) as trustee, the description contained in the deed to appellee's grantor *prima facie* carried the boundary to the thread of the stream. In descriptions of this nature the stream is the monument, and the thread of the stream the boundary."

The case, therefore, recognizes that the probate judge held the legal title to the bed of the stream, and also, where the stream is mentioned as the boundary, that the line extends to its thread. While under the facts of that particular case the boundary of the grant was restricted to the bank of the stream, the general rule, as therein stated, and as contended for by defendant in error here, was recognized as prevailing in this state.

The only question, therefore, upon this branch of the case is what effect is to be given to the descriptive words of these deeds. In the Robinson deed the language, in so far as pertinent here, is as follows: " thence south *to the Arkansas river;* thence *up said river* to where it is intersected by the south line of the town." Under the authorities which we have examined, and as we think must be so in a case where, as here, in a deed conveying lands a nonnavigable river itself is named as a monument, the grant extends to its center, and the thread of the stream is its true boundary. *City of Denver v. Pearce, supra;* Gould on Waters (2d ed.), § 196; 2 Devlin on Deeds, § 1024 *et seq.;* Martindale on Conveyancing (2d ed.), § 104, and authorities cited; 2 Am.

& Eng. Ency. of Law, 504 and notes; *Luce v. Carley*, 36 Am. Dec. 637; *Hardin v. Jordan*, 140 U. S. 371; *Buck v. Squiers*, 22 Vt. 484; *City of Boston v. Richardson*, 95 Mass. 146; *Railroad v. Bingham*, 87 Tenn. 522; 4 L. R. A. 623; 3 Washburn on Real Property (4th ed.), * 635 and notes; 2 Smith's Leading Cases (7th Am. ed.), * 216. Many other authorities to like effect might be cited.

3. The description in the deed from the probate judge to Abrahams is as follows: "that fraction *lying on the south side of the Arkansas river*, and on each side of but not interfering with Santa Fé Avenue, and extending from the avenue *to the river east and west*, and on the south to the south line of town." Counsel says that the controlling words are "lying on the south side of the river." The argument is that this means that the land lies on the south margin of the stream, that its boundary is the bank, and that the effect is the same as would be if the words were "up the west bank," which in *Murphy v. Copeland*, 51 Ia. 515, the court held restricted the boundary to the bank of the designated stream.

We cannot agree with counsel as to this. He interprets this language as though it meant "lying south of the river bank." This is a forced interpretation. The language means just what it says, viz: lying *on* the south side of the river, with the river itself as its boundary, not south of the south side. It is clear from this language alone that the river was intended as the boundary. But if there were any doubt about it, the words "and extending from the avenue *to the river east and west*," which follow the words first quoted, would remove all question. The same authorities cited in connection with the Robinson deed are applicable here.

It is further said, however, that if the interpretation which we have given to these words is the true one, still in Abrahams' deed to Peabody (one of the plaintiff's grantors) the grant was limited by the bank of the stream. The language of this deed is substantially that in the deed which we have just been considering, with the following additional words: "and bounded on the south by the south line of said quarter

sections, and on the north by the *present bed of the Arkansas river.*"

It is said that the words italicized expressly exclude any of the river bed from passing. However this may be as to the river bed on the northern boundary, there is a sufficient answer to the contention of the plaintiffs in error in this: The river makes a bend near this tract, so that, generally speaking, it constitutes both its northerly and westerly boundaries. This italicized language applies to the northern boundary of the tract, and that is not in question here. The land in dispute in the present controversy is not in any way affected by that part of the description, but only by the western boundary, and the language of the Peabody deed is, in this particular, the same as in the deed which Abrahams got from the probate judge. Neither of these deeds contains any express, or implied, reservation of the stream, or words limiting the boundaries to the bank. The legal title being vested in the grantor, and the lands being described as bounded on the river, the presumption—in no wise overcome—is that the grants extend to its center.

Other questions have been argued by counsel, but in view of the former decisions of this court which determine so many of the questions sought here to be raised, and considering the concessions and admissions made by the plaintiffs in error at the trial below, we do not consider that they are involved in this case. For the reasons given, the judgment below should be affirmed, and it is so ordered.

*Affirmed.*