## BREDOUW v. WILSON.

No. 35466.   April 7, 1953.

Rehearing Denied April 28, 1953.

*256 P. 2d 421.*

Charles Dunn, Tulsa, for plaintiff in error.

Milton W. Hardy, Tulsa, for defendant in error.

PER CURIAM. The parties will be referred to herein by their trial court designations.

The plaintiff, A. R. Wilson, sued the defendant, Chester R. Bredouw, for damages sustained because of the refusal of the defendant to permit plaintiff to continue in the operation of a restaurant in Tulsa, Oklahoma, known as Petroleum Inn. The suit was filed on February 11, 1949, and judgment entered November 2, 1951, on the verdict of the jury in the amount of $2,482.50.

On January 1, 1947, plaintiff and defendant executed articles of copartnership which provided, among other things, that the term should be for a period of five years from date, and that the partnership might be terminated by thirty days' written notice by either party. A copy of the agreement is attached to plaintiff's petition.

Defendant answered by an unverified general denial and by affirmative defense alleging that the plaintiff and defendant mutually agreed by oral agreement to a termination of the partnership on or about the 3rd day of February, 1949.

Briefly, plaintiff's testimony concerning the disputed issue of termination of the partnership is that in January, 1949, he was ill; that he, accompanied by the defendant, went to a doctor's office and that defendant, told the doctor that plaintiff "is kind of in a bad shape and that he had better get away for two or three weeks and take a rest," that he and defendant went home and discussed the matter and decided that plaintiff should go to Florida for three or four weeks, and that defendant made arrangements for procuring the railroad tickets for plaintiff; that plaintiff did not at any time quit the partnership and that defendant did not serve notice in writing terminating the partnership. Plaintiff further testified that he remained in Florida about six weeks, and that when he left for Florida he packed his personal effects in his trunk and stored them; that on his return from Florida he attempted to call defendant to see if he could talk to him; that defendant was not there, but a Mr. Murphy answered; that he came back from Florida expecting to go ahead with the operation of the business.

The defendant, called as a witness for plaintiff, identified himself in a picture reproduced in an advertising magazine, the "Downtowner." The "Downtowner" is incorporated in the case-made, and accompanying the picture of defendant, with a lady and another man, the following advertising matter is shown:

"Pix 1—Well, well, look who's doin' the big chores and greetin' out at the Petroleum Inn. Ole Fran Shuler Murphy, the smilin' agent on the right. He's takin' over with owner Chet Bredouw in the place of genial Al Wilson who's in Florida on an extended vacation for his health, (thanks for the card last week, Al) center is Mrs. M. (Minnie) whom you'll also be seein' around and maybe addin' a little fem touch to the salads and the place in general. Chet is in person on the left and smilin' most whole heartedly on linin' up the ms. 'course Chet will be around most of the time as usual except the times he slips away on one of his famous trips. Congrats Shuler and Minnie. We'll be seein' you around as we know will your many friends."

Testifying further as plaintiff's witness, defendant stated that Murphy became associated with him in the business in February or March, 1949.

Defendant, testifying in his own behalf, stated that in the latter part of January or the first part of February, 1949, plaintiff's condition was such that he could not do the work at the restaurant, had blots in his eyes and could not make change; that he went with plaintiff to the doctor's office and discussed the condition of both plaintiff and defendant, and that later plaintiff stated he was feeling bad, that he thought he had a stroke and was going to have to leave; that he and plaintiff had some argument over a $100 check that plaintiff had cashed and over the wrecking of defendant's car by plaintiff, and that plaintiff stated to him that he did not want any trouble, "All I want to do is to get away." That after this conversation plaintiff immediately called a cab and took all of his belongings and that defendant did not see him again until this suit was filed.

Defendant testified on cross-examination that he did not serve a notice in writing to terminate the copartnership, but that he and plaintiff definitely agreed orally to end the partnership. He stated that there was a settlement

made of 1948 business, but that no settlement was made at the time the partnership ended, as there was nothing to settle.

Clarence Eady, a cook employed at Petroleum Inn, testified that plaintiff told him just before leaving that he could not make change and could not remember, and told Eady that he, plaintiff, was crazy. That plaintiff told him "Good-bye," said he was leaving, that he could not take care of the business and had to get away from it. but did not say whether he was coming back.

Plaintiff denied having made the statements testified to by Eady, and denied that he ever stated to Eady or anyone else that he was through with the partnership.

Defendant bases his appeal upon two propositions:

(1) That the court erred in overruling defendant's demurrer to plaintiff's evidence.

(2) That the verdict was totally unsupported by the weight of the evidence and was contrary to the law and the evidence.

Defendant urges, in support of his first proposition, the basic rule of law that a copartnership may be dissolved by expressed agreement, or by the acts of the partners themselves. This is undoubtedly the correct rule of law. But in this case it is admitted that a partnership was created, and plaintiff testified positively that there was no mutual agreement to terminate it; that he went to Florida because of the condition of his health and intended to return and resume operation of the business, and that on his return from Florida, he discovered (and defendant admitted) that a Mr. Murphy had taken over operation of the restaurant. This was certainly competent evidence to be submitted to the jury on the issue of termination of the partnership and to determine that the plaintiff had been excluded from the partnership.

The rule that where there is any competent evidence which would reasonably support a verdict in favor of a party against whom a demurrer to the evidence is leveled, the demurrer should be overruled, has been so often reiterated by this court, that it has become axiomatic. There was no error in the overruling of the demurrer to plaintiff's evidence.

In his second proposition, the defendant contends that the verdict is totally unsupported by the weight of the evidence and was contrary to the law and the evidence.

Basically, the essential fact in controversy here was whether the partnership contract was terminated by a mutual oral agreement entered into between the parties on or about the 3rd day of February, 1949, The execution of the articles of partnership and the existence of the partnership were admitted by the pleadings, the answer and cross-petition being unverified. Defendant admits that he associated Murphy with him in the business sometime in February or the first of March, 1949. There is no dispute concerning the amount of the damages as reflected by the verdict.

It is the rule in this jurisdiction that a contract in writing may be rescinded or modified by a subsequent oral agreement fully performed, but the evidence must be positive, clear and convincing (Black v. Silver, 135 Okla. 198, 274 P. 886). Having pleaded, as an affirmative defense, the termination of the written agreement, the burden of proving such termination was properly upon the defendant, although the trial court in its instructions did not impose this burden upon defendant.

The testimony concerning the oral agreement to terminate the partnership on or about February 3, 1949, is in direct conflict. The circumstances attending plaintiff's departure and his sojourn in Florida are such as might well create different inferences as to whether the departure to Florida was intended and understood by the parties

as being the end of the partnership or was intended as a vacation trip only, prompted by the condition of plaintiff's health. Some of the circumstances support plaintiff's theory of the case and others support defendant's theory.

Under the law of this state the trial court could not have justifiably directed a verdict for the defendant in this case. It was the duty and function of the jury, and not of the court, to weigh the conflicting evidence, and determine wherein the greater weight lay.

In Kelley v. McKay, 120 Okla. 215, 251 P. 82, this court announced the well established rule:

"Where the evidence is conflicting, the Supreme Court will not review the evidence for the purpose of determining the weight thereof; but where there is any competent testimony reasonably tending to support the verdict of the jury, and the case is submitted under proper instructions from the court, the verdict will not be disturbed on appeal."

Alleged misconduct of the jury is discussed in the briefs of the parties. This was not assigned as error, and is therefore not an issue before this court.

Judgment affirmed.

The application for judgment on the supersedeas bond is granted and judgment is hereby rendered accordingly against Chester R. Bredouw, the principal, and Mrs. R. B. (Maude M.) Butler and Jack Bredouw, the sureties.

This court acknowledges the services of Attorneys J. T. Bailey, Lockwood Jones, and Lloyd Clearman, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.

HALLEY, C.J., and WELCH, CORN, DAVISON, ARNOLD, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur.