No. 22532.

GRIZZLY BAR, INC., A COLORADO CORPORATION AND VERNON D. VOHOSKA, D/B/A CHITWOOD REALTY COMPANY *v.* ROBERT HARTMAN.

(454 P.2d 788)

Decided May 26, 1969.

GEORGE J. FRANCIS, for plaintiffs in error.

HOLLEY, BOATRIGHT & VILLANO, MICHAEL C. VILLANO, for defendant in error.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

PLAINTIFFS in error were defendants in the trial court and will herein be referred to as "defendants" or as "Grizzly Bar" and "Vohoska." Defendant in error was plaintiff below and will be referred to herein as "plaintiff" or as "Hartman."

By this writ of error, defendants seek to set aside a jury verdict and judgment entered against them in favor of plaintiffs for $2,500.

Plaintiff Hartman entered into a written agreement dated March 5, 1965, for the purchase of the business known as "The Grizzly Bar." The purchase price was $40,000 of which $2,500 was paid to Vohoska, the real estate broker and agent acting for the Grizzly Bar. The agreement provided for a closing date as follows:

"5. The closing date for this sale shall be on or before June 15, 1965. In the event any of the above terms and conditions are not or cannot be complied with, this Agreement shall become void and of no force and effect, and all parties shall be released from all obligation hereunder and the Two Thousand Five Hundred Dollars ($2,500) paid hereunder shall be returned by Seller to Purchaser. In the event of a default on the part of the Purchaser, the said Two Thousand Five Hundred Dollars ($2,500) may be retained as liquidated damages by the Seller, and all Parties shall be released from any further obligation under this contract."

Other terms of the agreement pertinent to this controversy are paragraph 4 (B) and (D) which provided as follows:

"4. This sale is expressly conditioned upon:

"(B) The assignment of the lease for the premises or the execution of a new lease for the premises, to the Purchaser so that the Purchaser will have a lease for the premises on a standard Bradford-Robinson form, the terms and conditions of which are reasonably satisfactory to the Purchaser for a term expiring on the _____ day of April,

1971, at a monthly rental of Three Hundred and Fifty Dollars ($350.00) per month for the first two (2) years and $375 thereafter.

"(D) It is understood the lease on the above described premises shall also include all parking area now utilized by said restaurant and tavern business."

The closing date was set for Monday, June 14, 1965, in the office of defendant's attorney. Preliminary to closing, defendants furnished Hartman's attorney with pertinent closing documents. The attorney responded by letter objecting to the proposed lease. He concluded his letter as follows:

"Therefore, you are advised that Mr. Hartman has elected to terminate the same [agreement] unless full and complete compliance with the Agreement is accomplished by Monday, June 15, 1965."

It is here noted that the date referred to in the last paragraph was in reality a Tuesday rather than a Monday.

At the closing, all of the alleged deficiencies as set forth in the above mentioned letter were declared satisfied by plaintiff's attorney, except the lease. The tendered lease did not contain any provision for parking, as required by paragraph 4(D) of the agreement. Because of this, Hartman refused to consummate the sale. In all other particulars the lease was agreeable to Hartman.

Defendants thereupon secured from the lessors the following document which was offered in evidence as defendants' exhibit number 3:

"In conjunction with the lease dated June 1, 1965 executed by Michael Puzp [sic] and Lena Puzo to Robert Hartman for premises described as 7623 West Colfax Avenue, the undersigned Lessors, herein grant to Robert Hartman the right to have all parking area facilities to rear of the said premises used by customers of the Grizzley [sic] Bar during the term of the above described lease, without additional charge, said premises extending North 125 feet, west 80 feet, south 125 feet and east 80 feet.

"In event Robert Hartman wishes to fill in and black-top additional parking at his own expense, he may do so.

" /s/ Michael Puzo
Michael Puzo
" /s/ Lena Puzo
Lena Puzo
Lessors"

The court refused to admit exhibit number 3 into evidence. A letter dated June 15, 1965, was written to Hartman's attorney by defendants' attorney, which we set forth verbatim:

"At the time set for closing of the Grizzley [sic] Bar, your client Mr. Robert Hartman refused to close the transaction. Your office and this office disagreed over the premises to be demised.

"It is still our position that the Purchase Agreement does not include a greater area than that called for in the lease. Without prejudice to our position we now tender you an addition to the lease and state the sellers again stand ready willing and able to close. I shall be in my office or at home (PY 8-5319) and my clients stand ready, willing, and able to close the rest of this day.

"If your clients wish to close the matter, will you please call me."

This letter was offered in evidence as defendants' exhibit number 2. The court refused to admit exhibit number 2 into evidence.

Both exhibits 2 and 3 were personally delivered to the office of Hartman's attorney by the president of Grizzly Bar, Inc. between 4:15 and 4:30 p.m. on June 15. They were in fact received by the attorney on that day, and Hartman was so informed of this, likewise on the same day. However, neither Hartman nor his attorney responded to the exhibits.

Subsequently, Hartman demanded the return of the $2,500 deposit. Vohoska refused. Hartman commenced this action, demanding judgment against both defendants for $2,500. The jury returned its verdict in favor of

Hartman. Defendants' motion for new trial was denied.

Defendants allege two grounds for reversal. We need to consider only the first, which asserts that the court was in error in denying admission into evidence of defendants' exhibits 2 and 3.

We agree. Hartman's action against defendants was based upon Grizzly Bar's alleged failure to comply with the requirements of paragraph 4(B) and (D). He contends, as consequence thereof, that he was entitled to a return of the $2,500 deposit. It is clear that at the closing conference held on June 14, 1965, defendants had not then complied with paragraph 4(D) of the agreement. No lease was tendered which granted to Hartman the use of the parking area utilized by the patrons of the restaurant and tavern business. However, the agreement permitted complaince with its terms on or before the 15th of June, 1965.

Defendants' exhibits 2 and 3 were clearly relevant to the issue of whether Grizzly Bar tendered full performance of its obligations under the agreement within the time therein provided. If there was such full performance, and if Hartman refused to close, defendants were entitled to retain the $2,500 deposit. On the other hand, in the absence of such full performance, Hartman was entitled to the return of the deposit. This determination was one of ultimate fact to be resolved by the jury from a consideration of all the relevant evidence offered by the parties under proper instructions of the court.

Specifically, defendants' exhibit 2 was relevant to the question of whether the seller's tender was timely. The tender must have been "on or before June 15, 1965." It is here observed that no hour of the day was specified in the agreement. Under such circumstances, the intention of the parties was that defendant Grizzly Bar have the full day of the 15th until midnight in which to tender performance. The law generally does not recognize fractions of a day. *Denver v. Pearce*, 13 Colo. 383, 22 P. 774 6 L.R.A. 541; *Smith v. Board of County Commissioners,*

10 Colo. 17, 13 P. 917; *Computation of Time,* 9 Colo. 632, 21 P. 475; 86 C.J.S. *Time* § 16; 52 Am. Jur. *Time* § 15; 6 *S. Williston, Law of Contracts* § 857 (3d ed. W. Jaeger 1962). As stated in *Denver v. Pearce, supra,* "* * * It is certain that the ends of justice can never require the law to depart from the ordinary rule, and recognize a fraction of a day, to defeat the manifest intention of the parties."

Defendants' exhibit 3 was relevant to the question of whether paragraph 4(D) was complied with. Noncompliance with this provision caused Hartman to terminate closing of the transaction on June 14, 1965. By exhibit number 3 the lessors of the property involved specifically *granted* to Hartman "* * * the right to have all parking area facilities to rear of the said premises used by customers of the Grizzley (sic) Bar during the term of the above described lease, without additional charge * * *."

■ While the jury was permitted to consider testimony that exhibits 2 and 3 had been delivered to Hartman's attorney under the circumstances above set forth, it was not permitted to consider the subject matter of the exhibits. The court explained its ruling denying admission of the exhibits on two bases. First, the court believed exhibit number 3 was not a lease or an addendum to a lease, apparently because it was not physically part of the standard Bradford-Robinson form required by the agreement. However, the lease itself, to which exhibit 3 was specifically tendered as "an addition" thereto and "in conjunction" therewith, did meet this formal requirement. It is elementary that contracts may consist of two or more writings when they are so intended and by their terms are related to the same subject matter of agreement. *Meredith v. Ramsdell,* 152 Colo. 548, 384 P.2d 941; 17 C.J.S. *Contracts* § 58; 17 Am. Jur. 2d *Contracts* § 264.

■ The second reason advanced by the court for denying admission of exhibits 2 and 3 was that the original agreement was modified by the parties, changing

and reducing the time of performance by one day from June 15 to June 14. Modification of a written agreement must be demonstrated by clear and satisfactory evidence. *Guldman v. Wilder,* 45 Colo. 551, 101 P. 759; *Schulze .v. Shea,* 37 Colo. 337, 86 P. 117; 17A C.J.S. *Contracts* § 385. It cannot be effected by the sole action of one of the parties. Consent of both is necessary. The same meeting of minds is needed as was necessary to make the contract in the first instance. *Western Air Lines v. Hollenbeck,* 124 Colo. 130, 235 P.2d 792. The record discloses no evidence of modification of the final closing date other than the attempt to close on the 14th. This standing alone is insufficient to justify the court's conclusion that the agreement was so modified. The written agreement permitted performance "on or before" the 15th, which simply means at any time prior to but not later than on the final day, June 15, 1965.

The jury should have been permitted to consider exhibits 2 and 3 and it was prejudicial error to deny their admission into evidence.

. The verdict of the jury and the judgment of the court are set aside and the cause is remanded to the trial court for a new trial consonant with the views expressed herein.

MR. JUSTICE KELLEY not participating.