632 P.2d 998

Charles WEBBER and Ione Webber, husband and wife, Plaintiffs-Appellees,

v.

Robert V. SMITH and Muriel Smith, husband and wife, and Security Roofing & Construction Corporation, an Arizona corporation, Defendants-Appellants.

No. 1 CA–CIV 4762.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 18, 1981.

Mahoney & Rood by John W. Rood, Phoenix, for plaintiffs-appellees.

Hughes & Hughes, P. C. by Coit I. Hughes, Phoenix, for defendants-appellants.

## OPINION

FROEB, Judge.

Appellees Charles and Ione Webber (Webbers) sued appellants Robert and Muriel Smith and Security Roofing & Construction Corporation (collectively referred to as Smiths) over the rights of the parties under an agreement for the sale of stock and also for an accounting for alleged improper management and disposition of corporate assets. Several counterclaims were filed, the most relevant to this appeal being appellant Security Roofing's claim against the Webbers for damages for the value of a motorcycle and truck owned by Security Roofing but held by the Webbers, and appellants Smiths' claim against the Webbers for wrongful attachment.

The factual context in which this lawsuit arose is as follows. In 1964, after working in the office of Security Roofing in a semi-managerial capacity, Charles Webber was presented an agreement in which the Smiths agreed to sell him 1,000 of the 3,000 outstanding shares of Security Roofing for the price of $20.00 per share. The agreement specified that Webber would be paid one-third of the net profits of the company beginning January 1, 1964, and those amounts would be credited against the purchase price of the stock. It further specified that the stock-purchase transaction would continue until Webber left the corporation or all 1,000 shares were purchased.

Webber was employed by Security Roofing until 1970, when he quit. The net profit for 1964 through 1966 was $19,433.90, $25,047.09, and $24,863.15, respectively. One-third of these totaled amounts exceeds $20,000.00—the purchase price of the stock. The stock, however was never delivered to the Webbers and this lawsuit was instituted by them to recover the shares and to obtain an accounting.

The matter was tried to the court and judgment was entered denying all relief to the Webbers on their complaint and all relief to the Smiths on the counterclaims.[1] The trial court found:

---

1. The claim by the Smiths against the Webbers for wrongful attachment was granted by default judgment, but no damages were found. See *infra*.

1. That the plaintiffs Charles Webber and Ione Webber made an offer to buy one thousand (1,000) shares of stock of the Security Roofing and Construction Corp., and the defendants Robert V. Smith and Muriel Smith agreed to sell to the plaintiffs one thousand (1,000) shares of Security Roofing and Construction Corp. stock.

2. That the stock was never paid for by the plaintiffs Charles Webber and Ione Webber and the stock was never delivered by the defendants Robert V. Smith and Muriel Smith to the plaintiffs Webber.

An appeal was then filed and, on June 16, 1977, this court, by memorandum decision, vacated and remanded the case to the trial court for additional specific and material findings. *See Webber v. Smith*, 1 CA-CIV 3094 (Ariz.App. June 16, 1977). In that decision, the court stated that as far as payment on the stock-purchase plan was concerned, it was immaterial that the income was not actually paid out to the Webbers and then paid back to Security Roofing. As the court stated:

> The disposition of this income was within the control of the [Smiths], and therefore they cannot rely upon their failure to apply it in accordance with the intent of the parties' agreement as indicating a failure on the [Webbers'] part to pay for the stock.

Slip op. at 4. This court then noted that a crucial evidentiary question on remand would be whether the contract was rescinded or abandoned. Although a new trial was not ordered, the decision provided that the new findings could be based on existing *or* additional evidence.

On remand, without taking additional testimony, the superior court entered findings and conclusions of law and held for the Webbers. It is apparent that following our rejection of the trial court's original premise (that the money and stock had to physically change hands), a review of the evidence persuaded the trial judge that there had not been an abandonment or re-scission of the contract. Therefore, the trial court found the Webbers to be owners of one-third of the company stock and ordered an accounting. In addition, the court dismissed several counterclaims filed by the Smiths and found the Smiths' counterclaim as to the motorcycle and truck to be moot. This second judgment is the subject of this appeal.

The Smiths now raise four issues: (1) Whether abandonment or rescission of the stock-purchase contract must be proven by clear and convincing evidence; (2) if the burden of proof is by a mere preponderance, whether the evidence presented on abandonment or rescission met that standard; (3) whether the trial court erred in finding the counterclaim for the value of the motorcycle and truck moot; and (4) whether the trial court erred in finding no damages on the Smiths' wrongful attachment claim.

Turning to the first issue, we are not referred to an Arizona decision ruling on this question. There is a minority view that a preponderance of the evidence is sufficient to prove an oral rescission of a written contract. *E. g., Sullivan v. Mosner*, 266 Md. 479, 295 A.2d 482 (1972); *Vocke v. Third National Bank & Trust Co.*, 28 Ohio Misc. 58, 267 N.E.2d 606 (1971); *see Annot.*, 94 A.L.R. 1278 (1935) (degree or quantum of evidence required to establish oral rescission or modification of written contract). There is little reason given for adopting this standard other than that is the usual civil rule. *E. g., Cleveland Metal Bed Co. v. Kutz*, 27 Ohio App. 245, 160 N.E. 725 (1927). The minority view has been adopted by only a small number of courts; in fact, at least one jurisdiction following the minority rule appears to have reversed itself. *Compare Knight v. Gulf Refining Co.*, 311 Pa. 357, 166 A. 880 (1933) *with Nicolella v. Palmer*, 432 Pa. 502, 248 A.2d 20 (1968).

The view adopted by a majority of jurisdictions is that an oral rescission of a written contract must be proven by clear and convincing evidence. *E. g., Centex*

Construction Co. v. James, 374 F.2d 921 (8th Cir. 1967); *Grizzly Bar, Inc. v. Hartman,* 169 Colo. 178, 454 P.2d 788 (1969); *Resource Engineering, Inc. v. Silar,* 94 Idaho 935, 500 P.2d 836 (1972); *Jenson v. Olson,* 144 Mont. 224, 395 P.2d 465 (1964); *A & P Const., Co. v. Dorn,* 79 N.M. 292, 442 P.2d 782 (1968); *Clark County Sports Enterprises, Inc. v. Las Vegas,* 606 P.2d 171 (Nev. 1980); *Bredouw v. Wilson,* 208 Okl. 393, 256 P.2d 421 (1953); *Mathis v. Thunderbird Village, Inc.,* 236 Or. 425, 389 P.2d 343 (1963). As one case has stated:

> An intent to rescind a contract may be inferred from acts or a course of conduct of the parties which clearly indicates a mutual understanding that a written contract has been abrogated or terminated . . . . However, such a rescission is in effect a parol modification of the written agreement which . . . must be proved by clear and convincing evidence.

*M. K. Transport, Inc. v. Grover,* 101 Idaho 345, 349 n.5, 612 P.2d 1192, 1196 n.5 (1980). It is appropriate, in our opinion, that an oral rescission of a written contract be proven by a more stringent standard than a mere preponderance of evidence. Where the parties have initially formalized their agreement by a written contract, the law requires that the oral statements relied upon to set it aside be clear and convincing to the trier of fact.

The Smiths' second argument is that they have established by a preponderance of the evidence that the stock-purchase agreement was abandoned or rescinded. Since we have rejected this standard of proof, we need not consider the argument further. We observe, however, that under either standard our duty on review is to determine if the findings of the trial court are supported by reasonable evidence. *See Sandblom v. Corbin,* 125 Ariz. 178, 608 P.2d 317 (App.1980). Since the weight to be given to evidence is peculiarly within the province of the trial court, it is the trial court and not the appellate court which draws a distinction between evidence which is clear and convincing and evidence which merely preponderates. *See State ex rel.*

*Herman v. Southern Pacific Co.,* 8 Ariz.App. 238, 445 P.2d 186 (1968). In the present case, there was more than ample evidence to refute the claims of abandonment and rescission and the trial court's resulting rejection of them was justified.

The third issue raised is whether the trial court erred in finding moot the claim for damages for the loss of a motorcycle and truck.

When Charles Webber left Security Roofing in 1970, he kept a motorcycle and truck owned by the business. After the Webbers' lawsuit was initiated, Security Roofing filed a counterclaim alleging that the value of the motorcycle was $2,550.00 and the value of the truck was $3,000.00 and demanded those amounts in damages. Following the first judgment in this case, however, Security Roofing obtained a writ of possession for the truck and motorcycle and the items were returned. Thus, in the second judgment, the trial court declared the counterclaim on those items to be moot. We agree. Since Security Roofing recovered possession of the items from Webber, its counterclaim, alleging that Webber had control of those items and demanding damages for their value, was moot. Security Roofing did not seek damages for loss of use during the period the items were held by the Webbers. The court properly dismissed the claim.

The final issue raised by the Smiths is whether the trial court erred in finding no damages on the Smiths' wrongful attachment claim. The writ of attachment in question was filed by the Webbers in 1970 prior to judgment, and prevented the Smiths from transferring or encumbering three real properties they owned. The Smiths filed a counterclaim for wrongful attachment in 1971. The Webbers did not answer the counterclaim and a default judgment was obtained by the Smiths. Thereafter, in 1975, the attachment was quashed.

By reason of the default, the only remaining issue regarding the wrongful attachment claim was one of damages. This question was litigated at the trial. The

trial court found that no damages were incurred by the Smiths by reason of the wrongful attachment. The only testimony on the subject was presented by Robert Smith who stated that he could not sell the property and that he did not list it because it had been attached. There was no evidence, however, of any actual losses incurred. On review of the record, we agree with the trial court that there was no evidence to justify an award for damages by reason of the attachment.

The judgment of the trial court is affirmed.

O'CONNOR, J., concurs.

WREN, Chief Judge, concurring specially:

I concur in the result.