803 P.2d 450

**Ron ANCELL, dba Barclay Financial, Plaintiff/Appellant,**

**v.**

**UNION STATION ASSOCIATES, INC., an Arizona corporation, and Edward M. Kobel, Defendants/Appellees.**

**No. 2 CA–CV 90–0123.**

Court of Appeals of Arizona, Division 2, Department B.

Nov. 27, 1990.

William E. Druke, Tucson, for plaintiff/appellant.

Nye, Shaw, Ahern, McCormley, Chambliss & Brown, P.C. by Susan V. Pearlstein and Richard Q. Nye, Phoenix, for defendants/appellees.

## OPINION

ROLL, Presiding Judge.

Plaintiff Ron Ancell, dba Barclay Financial, appeals from the granting of summary judgment in favor of defendants Union Station Associates, Inc. and Edward M. Kobel (Kobel) in this breach of contract action for a mortgage broker's commission. For the reasons set forth below, we vacate the judgment of the trial court and remand for further proceedings.

## FACTS

In reviewing the trial court's granting of summary judgment, we view the evidence in the light most favorable to appellant. *Hill–Shafer Partnership v. Chilson Family Trust*, 165 Ariz. 469, 472–73, 799 P.2d 810, 813–14. When uncontroverted, "facts alleged by affidavits attached to motions for summary judgment may be considered as true...." *Portonova v. Wilkinson*, 128 Ariz. 501, 502, 627 P.2d 232, 233 (1981). Accordingly, the facts are as follows.

In October 1987, Kobel wanted to obtain a mortgage on a certain Phoenix property. Proceeds from the mortgage were to be used to develop a shopping center. Ancell, a mortgage broker, contacted Kobel's chief financial officer, Terry Gilbreath, regarding Ancell's willingness to secure a bank commitment to issue Kobel a mortgage.

On December 7, 1987, Ancell and Kobel entered into a written contract, obligating Kobel to pay $64,210 to Ancell if Ancell obtained a "firm and binding commitment from an acceptable lender" to extend a mortgage to Kobel. Kobel agreed to pay Ancell one percent of the loan amount secured by Ancell and accepted by Kobel. A promissory note was due and payable to Ancell in the amount of $64,210 upon Ancell's performance of the contract.

The contract also provided that in "the event [Ancell] has not delivered a firm and binding commitment letter from an acceptable lender in accordance with [Kobel's] request and the attached 'Application for Financing of Real Estate' by January 15, 1988, this agreement will be null and void." No commitment letter was delivered by January 15, 1988.

However, after January 15, 1988, Ancell and Gilbreath maintained contact by telephone. Ancell continued his efforts to secure a loan commitment for Kobel with Nationwide Bank of San Diego, California (Nationwide) and Gilbreath provided Ancell and the bank with requested information and documentation. On May 5, 1988, Ancell was told by Harlene Whited, a Nationwide loan officer, that the loan had been approved for $6,500,000. On June 14, 1988, Kobel told Ancell that it was essential that the bank loan close before the end of June because the land purchase contract would expire at that time. On July 1, 1988, Kobel notified Ancell that "the bank would not fund the loan and close because Lucky's, the anchor tenant, had given written notice at the closing it would not be operating a grocery store in the shopping center as anticipated."

## PROCEDURAL HISTORY

Ancell filed a breach of contract action against Kobel to recover the brokerage commission. Kobel moved for dismissal, alleging that the complaint on its face showed that conditions precedent had not been met and the alleged contract was void. Ancell filed a response to the motion to dismiss and moved for summary judgment, attaching an affidavit by Ancell and additional supporting documentation. Kobel filed responsive pleadings as well as a cross-motion for summary judgment, attaching an affidavit by Kobel.

The trial court granted summary judgment in favor of Kobel and, in a minute entry dated February 6, 1989, stated: "Plaintiff failed failed [sic] to meet the condition precedent and neither the contract or the note are enforceable." Following Ancell's motion for clarification of the judgment, the trial court stated in a minute entry, "the phrase ['failed to meet the condition precedent'] had reference to the necessity for having a firm and binding commitment letter by January 15, 1988."

## ISSUES ON APPEAL

On appeal, Ancell argues that summary judgment should have been denied because a genuine issue of fact exists regarding whether the time for performance of the contract was extended by the mutual agreement of the parties, as evidenced by their conduct after January 15, 1988. Kobel contends that even should a factual issue exist regarding whether the time for performance was extended, summary judgment was appropriate because no firm and binding commitment letter was delivered.

### Sufficiency of Ancell's Opposition to Motion for Summary Judgment

Ancell maintains that his opposition was sufficient to preclude entry of summary judgment. In reviewing summary judgment, this court views the evidence in the light most favorable to the party opposing the motion and all favorable inferences fairly arising from the evidence must be given to the opposing party. *Hill–Shafer Part., supra,* at 472–73, 799 P.2d at 813–14; *Wisener v. State,* 123 Ariz. 148, 149, 598 P.2d 511, 512 (1979). Summary judgment is appropriate where there is no genuine dispute as to any material fact, only one reasonable inference can be drawn from those facts, and the moving party is entitled to judgment as a matter of law. *Gulf Ins. Co. v. Grisham,* 126 Ariz. 123, 124, 613 P.2d 283, 284 (1980); *Auto–Owners Ins. Co. v. Moore,* 156 Ariz. 184, 185, 750 P.2d 1387, 1388 (App.1988).

When a motion for summary judgment "makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the opposing party to produce sufficient competent evidence to show that there is an issue." *G.M. Dev. Corp. v. Community American Mortgage,* 165 Ariz. 1, 5, 795 P.2d 827, 831 (1990). Kobel contends that summary judgment was appropriate based on Rule 56(e), Ariz.R.

Civ.P., 16 A.R.S. Rule 56(e) requires that supporting and opposing affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Id.; Portonova, supra,* 128 Ariz. at 502, 627 P.2d at 233.

■ According to Kobel, portions of Ancell's affidavit contain legal and factual conclusions, opinions, speculative comments, and hearsay. Such statements, Kobel argues, cannot properly be considered in ruling on a motion for summary judgment. We agree that "[a]s a general rule, an unsworn and unproven assertion is not a fact that a trial court can consider in ruling on a motion for summary judgment." *G.M. Development Corp., supra,* 165 Ariz. at 5, 795 P.2d at 831. *See also Prairie State Bank v. I.R.S. of Treasury Dept.,* 155 Ariz. 219, 221 n. 1A, 745 P.2d 966, 968 n. 1A (App.1987); *Cecil Lawter Real Estate School, Inc. v. Town and Country Shopping Center Co., Ltd.,* 143 Ariz. 527, 534, 694 P.2d 815, 822 (App.1984).

■ Ancell's affidavit in support of his motion for summary judgment contained information obtained by Ancell as a result of conversations with Nationwide's loan officer. These statements constitute hearsay. However, Kobel made no objection or motion to strike any of the statements made by Ancell in his affidavit. In fact, portions of Ancell's affidavit were utilized by Kobel in support of his cross-motion for summary judgment. Deficiencies in supporting documents attached to summary judgment pleadings can be waived. *Johnson by and through Johnson v. Svidergol,* 157 Ariz. 333, 335, 757 P.2d 609, 611 (App. 1988); *Townsend v. Columbia Operations,* 667 F.2d 844, 849–50 (9th Cir.1982); *Davis v. Howard,* 561 F.2d 565, 570 (5th Cir.1977). As this court pointed out in *Svidergol, supra,* "[w]hen insufficient supporting documents are submitted, a motion to strike is appropriate.... Objection to insufficient documentation is required so that the offering party may have an opportunity to cure the alleged defects." 157 Ariz. at 335, 757 P.2d at 611 (citations omitted).

More importantly, many significant "facts" contained in Ancell's affidavit constitute admissible evidence. These facts were learned by Ancell as a result of communications with Kobel and Kobel's agent, Gilbreath. In this regard, Ancell's affidavit established that after January 15, 1988, had passed, (1) Kobel never told Ancell the contract was null and void; (2) Gilbreath notified Ancell that a Nationwide appraiser visited the site on January 15, 1988; (3) Ancell, in response to a request by Nationwide, advised Gilbreath that Nationwide required certain corporate documents; (4) Gilbreath told Ancell that he was express mailing to the bank the requested documents; (5) Gilbreath notified Ancell that he was attempting to correct that information in the Dunn & Bradstreet report which Nationwide found worrisome; (6) Ancell received from Gilbreath a copy of a letter sent to Nationwide apologizing for Kobel's delay in submitting requested documents; (7) Kobel advised Ancell that it was essential that the bank loan close by the end of June 1988; and (8) on July 1, 1988, Kobel notified Ancell that the loan did not close on time. This list of interactions between Kobel and Ancell is not exhaustive. Kobel does not challenge the accuracy of these factual assertions.

■ Ancell contends that these interactions evidence a modification of the brokerage contract because they establish the parties' intent to disregard the termination date provided for in the contract. A written agreement may be subsequently modified by the parties, even where one party has failed to perform by the contract deadline. *Coronado Co., Inc. v. Jacome's Dept. Store, Inc.,* 129 Ariz. 137, 139, 629 P.2d 553, 555 (App.1981); *In re McDonald's Estate,* 4 Ariz.App. 94, 97, 417 P.2d 728, 731 (1966). "Parties to an unperformed contract may, by mutual consent, modify it." *Nationwide Resources Corp. v. Massabni,* 134 Ariz. 557, 563, 658 P.2d 210, 216 (App.1982). "Conduct can manifest acceptance of an offer or acquiescence in a modification." *Adair Homes, Inc. v. Jarrell,* 59 Or.App. 80, 85, 650 P.2d 180, 183 (1982); *see also Scott v. Castle,* 104

Idaho 719, 724, 662 P.2d 1163, 1168 (App. 1983).

Here, Ancell's affidavit provides uncontroverted evidence that Kobel continued to work with Ancell after the termination date set forth in the contract. Evidence of this conduct and other efforts on the part of Kobel raise a genuine issue of material fact as to whether Kobel manifested acceptance of a modification of the contract extending the time in which Ancell had to secure an acceptable loan commitment. *Cf. Darner Motor Sales, Inc. v. Universal Underwriters Insurance Company,* 140 Ariz. 383, 393, 682 P.2d 388, 398 (1984) (interpretation of a negotiated instrument may be aided by evidence of subsequent conduct); *Webber v. Smith,* 129 Ariz. 495, 498, 632 P.2d 998, 1001 (1981), *quoting M.K. Transport, Inc. v. Grover,* 101 Idaho 345, 349 n. 5, 612 P.2d 1192, 1196 n. 5 (1980) ("An intent to rescind a contract may be inferred from acts or a course of conduct ...").

Kobel also suggests that summary judgment was appropriate because Ancell produced insufficient evidence of a "firm and binding commitment" on behalf of Nationwide to issue the loan. We disagree. When the affidavits submitted by Ancell and the last page of Nationwide's loan agreement with Kobel are considered, Ancell has produced evidence raising at least an inference that Kobel received a satisfactory commitment from Nationwide.[1]

## CONCLUSION

On these facts, summary judgment was inappropriate. The order of the trial court granting Kobel summary judgment is vacated and the matter is remanded to the trial court for further proceedings.

FERNANDEZ, C.J., and HOWARD, J., concur.

---

1. Ancell submitted an affidavit of a Valley National Bank assistant vice president with extensive commercial loan experience. His affidavit states that a loan commitment which includes a "no adverse change" provision such as the one extended by Nationwide is typical "and that such a commitment is considered firm and binding."