## MONTGOMERY WARD & CO v SMITH

Ohio Appeals, 5th Dist, Muskingum Co

Decided Dec 3, 1931

Meyer & Crossan, Zanesville, for plaintiff in error.
Graham & Graham, Zanesville, for defendant in error.

SHERICK, PJ.

The plaintiff in error says that he should not be penalized by reason of this omission from the bill of exceptions, and we are not inclined to so do in this case, for the reason that the pertinent facts or contents of the lost letters are set forth in the brief of the defendant in error, and are in part supporting of Smith's case. The plaintiff in error concedes that the extracts of these lost letters so appearing are true, and in order that justice may be done in this review we are disposed to consider the merits in this matter as if these letters had not been lost and were a part of the bill of exceptions.

We would remark at this point, however, that better practice would require that counsel, in a situation of this kind, should by agreement have reduced so much of the contents of these letters to writing and thereby assisted the trial court and procured their incorporation in the bill of exceptions.

The facts as developed by the pleadings and the evidence in this case are as follows:

It appears that on the 14th day of April, 1928, that Smith was employed as a trainee by the plaintiff company, and in June cr July of that year he became assistant manager of the company's Zanesville store. Thereafter, on November 22, 1928, Smith was employed as manager of this store. His employment was a month to month proposition, and he was to receive a salary of $216 a month, payable semi-monthly. It also appears from his testimony that at the time of his employment as general manager that one Riney, General Manager of the Chain Store Division of the company, had stated to him that he was to get so much a week, but that he could earn more through the company's bonus plan, and that our salaries would be for the efforts put forth, and that is what really spurred us

along. We do not find from an examination of the record that this fact is denied.

It further appears that Smith received a bonus from the company for his services rendered from November 22, 1928, to the first day of January, 1929. It appears from the brief of the defendant in error that his lost Exhibit F, dated March 3, 1929, contains a reference to the enclosed check for bonus to Smith for the year 1928; that this letter goes forward assuring Smith that the bonus for the year 1929 would be continued on for that year, perhaps with some modification or change, but to assure him of a bonus for the year 1929. It also appears that Smith's lost Exhibit E, dated May 1, 1929, contained further assurance of a 1929 bonus. Thereafter, on July 27, 1929, the company announced its bonus plan for that year, and this was to be retroactive to January 1, 1929.

Referring again to lost Exhibit E, we note that it is stated, "My purpose in writing this letter now is to eliminate any doubt as to the 1929 bonus plan; to reassure you that we are willing to pay people for what they do." Examining now what is termed "The Montgomery Ward & Company 1929 Bonus Plan," we note that this reads in part as follows: "You are included in the Chain Store Bonus Plan for 1929, the conditions and rules being as follows." What is denominated as "Paragraph 1" recites: "A Chain Store Manager becomes eligible to participate in bonus earnings on his appointment as Manager; bonus earnings will cease to accrue upon termination of appointment as Manager." The Plan further recites that the bonus is based upon two elements; the first of which is a percentage of a total net profit of the store's 'over counter' sales; and the second being a percentage on the value of orders taken in the stores and transferred to the Mail Order House. This Plan further recites that the plan of the two previous years has brought about certain inequalities and that it is found necessary to change the '29 Plan in part and that perhaps the same may be in the future further modified. The particular portion of the Plan upon which much emphasis is placed by the Company refers to what is said in Paragraph 4 of the Plan. This reads as follows: "The Bonus Plan is not a contract of employment and all bonus privileges will be forfeited by you if you leave the employ of the Company voluntarily or involuntarily, regardless of the date of said termination of employment."

The record clearly shows that Smith acted as general manager of the store for the entire year of 1929, and that he resigned

or was discharged, the fact of which seems immaterial, in the latter part of January, 1930. It may be stated that a further proven fact is that the company under the provisions of the bonus plan paid to Smith his bonus on all transfer orders for six months of the year 1929. Upon this state of facts the question is presented whether or not this bonus agreement or contract was a nudum pactum or a valid contract between the parties, the theory of the plaintiff being that this bonus plan was in fact a unilateral contract, made by the company in part in favor of Smith, and that he having continued in the employment throughout the year 1929, when he was not bound to do so, that he had accepted said offer by the performance as general manager of the company during the year, and by so doing the contract became a valid and binding contract. On the other hand, it is claimed by the company that the bonus plan is not a contract of employment; that it is a mere gratuity; and that it had no effect in any way of inducing Smith to do or not to do anything other than his regular work; and that he was discharged by the company prior to the time that any bonus was due for the year 1929.

We believe that two facts in this case are all important of the determination of the question presented; the first of which is that it must be kept in mind that it is proven that at the time of Smith's employment on November 22 of 1928 that he was in fact promised a bonus for his services to be rendered during the year 1929, and it must next be remembered that his contract of employment was not for the period of the year 1929 but was a month to month proposition. It also appears from the evidence that Smith was told that he would not be entitled to a bonus unless he continued in his employment throughout the year 1929. From these facts it seems to us that the offer and prospect of a bonus as held out to Smith by the agent of his employer was in fact an offer of further compensation for work well done as manager of the company store. It is a common, accepted means of spurring employees on to greater effort, and is done for the purpose of creating a greater net profit for the employer, and in order that the employee's compensation may be commensurate with his efforts to that end these offers are made to employees. From the terms of his employment Smith had a right at the end of any month to leave the employ of the company. There can be no doubht that had he done so during the year 1929, he would not have been entitled to any bonus

on that portion of the year that he had labored, but, as it appears from the record he remained in the employ of the company during the entire year.

Now the company contends that that portion of Paragraph 4 of the bonus plan must preclude Smith from any recovery in this case, by reason of the fact that the plan provided that he was not entitled to additional compensation if he quit the company, "regardless of the date of such termination of employment." It does not seem logical to assume that this provision was intended to apply to anything but the year 1929. Had Smith remained with the company, let us say for ten years thereafter, and the bonus for '29 had not been paid, that the company might have then refused payment of the 1929 bonus. It is our view that when Smith completed his services for the year 1929, and it developed that there was a net profit, as provided by the bonus plan, that he was then entitled to his bonus from the company, irrespective of the date when the employer chose to declare the bonus payable. After the contract was once made, accepted, and fully performed by the employee, the company then had no right to write that into the contract, which it now claims was the intent thereof. By so doing the company would materially change the provisions of the contract, which seem to us to be plain and clear.

The plaintiff in error directs our attention to numerous authorities which seemingly are in point, but upon examination we find elements therein which are lacking in the instant case, many of which pertain to employment for a fixed period and in which the employee labors for a considerable period of a year without knowledge of any bonus or profit sharing plan.

We have been directed to a note appearing in 28 ALR—346, and this we have examined. We have also directed our attention to a notation of authorities appearing in this same volume, appearing on page 331, and the authorities therein listed, to our notion, seem to fully support the view herein adopted by this court. We direct attention to the case of Scott v Duthie, 28 A. L. R. 328, 216 Pac., 583. In this case the Supreme Court of Washington say that, "One employed for an indefinite term of service, who, in response to and reliance upon an offer of a bonus, if he will continue in the service until certain work is finished, continues his service for said time, may recover the bonus."

The case of Kerbaugh v Gray, 212, Fed., 716, is of interest and in point in the question before us. In this case the court made

the following comment, and it is in perhaps the same language and fact as the claim of the plaintiff in error. We therefore quote the court's statement: "The objection mainly relied upon at the trial and here was that this promise of a bonus, if made, was nudum pactum, because the plaintiff, being bound to do his best for his salary, gave nothing in the way of consideration to support the promise of a bonus. This would be true if the plaintiff were legally bound to continue in the employment of the defendant to the end of the season. But he was not, and could have quit work at any time. * * * Therefore the jury had a right to find that he continued in the employment after the promise of a bonus relying upon it."

The case of Zwolanek v Baker Manufacturing Company, 150, Wisconsin, 517 (137 N.W., 769), is further offered for the reason and law herein suggested.

The plaintiff in error strongly advances the case of **Black v Tyler Company, 12 Oh Ap, 27**; and the defendant in error with equal vim presents the case of **Parish & Bingham Company, Corp., v Jackson, 16 Oh Ap, 51.** These cases are decided by the same court; differently constituted, however. We are unable to reconcile our view with the pronouncement as made in the Black case and as suggested in the note appearing in 28 A. L. R., page 335. This case seems out of line with many decisions therein set forth. We also believe that the reason appearing in Parish v Jackson case is the sounder. and in part supports the holding in this action, that is, in as far as the facts therein are applicable to the facts in this case.

It is, therefore, the judgment of this court that this case should be and the same is hereby affirmed.

Exceptions.

LEMERT and MONTGOMERY, JJ, concur.