VOCKE *v.* THE THIRD NATIONAL BANK & TRUST CO. ET AL.

(No. D 78727—Decided February 12, 1971.)

Dayton Municipal Court, Civil Division.

*Messrs. Hanaghan & Hanaghan,* for plaintiff.
*Mr. C. W. Slicer,* for defendants.

RICE, J.
A. THE FACTS
This case came on to be heard by the court, without the intervention of a jury, upon the pleadings and the testimony of both parties and their witnesses. In addition, the court has had the benefit, as an aid in reaching its decision, of the excellent oral arguments and written memoranda submitted by counsel for both parties.

This lawsuit involves an action by a former employee of the defendant corporation, against that corporation and the trustee of the corporate profit sharing plan, the Third National Bank and Trust Company, claiming that, under the terms and conditions of such profit sharing trust agreement as same were explained to him by a company official,

having commenced participation in the plan as a salaried employee on or before September 30, 1963, he is entitled to the sum of $1,036.12 as his share of his participation in the fund on the termination of his employment in May of 1967. The corporation and the trustee, as parties defendant, deny that the plaintiff was a participant in such plan for a continuous period of three years *after* commencement of participation; said participation not having commenced until September 30, 1964, the first anniversary date following one year of continuous employment as a salaried employee. This interpretation is based upon the written profit sharing trust agreement entered into between the defendant corporation and the trustee. Since, according to the defendants, the plaintiff lacks the necessary (as far as the vesting of his share of participation is concerned) three continuous years participation in the plan prior to his terminating employment with the corporation in May of 1967, the plan never "vested" in the plaintiff and he is entitled to nothing from the profit sharing trust fund upon the termination of his employment.

Since the ultimate issue of whether or not the defendant is entitled to a share of the profit sharing trust fund as his share of "participation" must depend upon when he commenced "participation" as a salaried employee in said fund (September 30, 1963, or September 30, 1964), the following facts, all of which are either admitted or uncontradicted, are relevant to the issue at Bar:

(1) The Third National Bank and Trust Company is the duly authorized trustee of a profit sharing trust plan duly executed by the Elano Corporation, Xenia, Ohio, on September 28, 1956. At the time the plan was instituted, the corporation made an initial allocation or contribution to the accounts of all who were salaried employees as of that date. The date of September 30 (the end of the company's fiscal year) was chosen as the "anniversary date" of the plan.

(2) The profit sharing plan was understood by all employees, including the plaintiff, to be part of the employee's salary or compensation. Only the corpora-

tion makes a contribution into the profit sharing plan. Said contribution is made from net profits and may range in amount from zero up to 15% of a "participating" salaried employee's yearly compensation. In any given year, the company could, but was not obligated to, contribute up to 15% of said salaried employee's yearly compensation. No contribution was made by the employee to the plan, either directly or by a deduction from the employee's salary in lieu of a direct contribution by said employee.

(3) The plaintiff became an employee of the defendant, Elano Corporation, in August of 1956, as an hourly paid employee in Tool Inspection. By July of 1963, he was earning $3.50 an hour or, based upon a 40-hour work week, some $140.00 per week.

(4) In July of 1963, he became a salaried employee to wit: Chief Inspector at a salary of $155.00 per week. At the time he became a salaried employee, the vice president and general manager of the defendant corporation, Wegman, orally explained the details of the company's profit sharing plan. The gist of the explanation, according to the plaintiff, was that it was crucial for the plaintiff to "come aboard" as a salaried employee immediately, in order that he start his participation or "get participation" in the plan with that year's anniversary date of September 30, 1963. From this conversation, the plaintiff inferred that he would be eligible to participate in the plan—to participate in the contribution to be made by the corporation for the fiscal year ending September 30, 1963.

(5) During the course of his explanation of the company's profit sharing plan, Wegman explained (and this explanation confirmed what the plaintiff referred to as the "general knowledge of the company employees" concerning the plan) that after he was a salaried employee for one year subsequent to the first anniversary date of September 30, he would get a notice from the trustee concerning his "accumulated participation," and that after three years, he could withdraw 30% of the accumulated participation. The percentage of withdrawal would increase

10% annually until, after the 10th year, an employee could withdraw all or 100% of the accumulated participation.

(6) This was the only explanation of the profit sharing plan offered by the company officials. At no time did the plaintiff ask for or receive a copy of the written profit sharing agreement entered into between the defendant corporation and the trustee, the Third National Bank and Trust Company. At no time did the corporate trustee endeavor to explain the mechanics of the plan to the plaintiff.

(7) Subsequent to September 30, 1964, after the plaintiff had been a salaried employee for some 16 months, he received the first of what were to be three annual notices of participation. Each of said notices indicated the dollar amount of the plaintiff's individual participation in the profit sharing plan.

The first notice, dated November 27, 1964, purported to give the plaintiff a report of his participation in the profit sharing trust as of September 30, 1964 (exhibit No. 1). Said notice specifically stated the value of the plaintiff's share, as of September 30, 1963, to be zero and the value as of September 30, 1964, to be $1,392.58. Subsequent notices, plaintiff's exhibits 2 & 3, dated January 20, 1966, and November 18, 1966, respectively, purported to list the plaintiff's participation in the trust as follows:

(1) As of September 30, 1965—$2,553.10
(2) As of September 30, 1966—$3,453.75

(8) The plaintiff terminated his employment in May of 1967, after having served some three years and eight months as a salaried employee. After waiting for some nine months, he demanded his share of the participation, 30% of the aforesaid $3,453.75 or $1,036.12. This demand was based upon his understanding of the plan as explained to him by Hal Wegman that after three years "participation" he could withdraw up to 30% of his accumulated participation. The plaintiff was advised by a corporate official, Mr. Nutter, that he would not receive his participation.

When he requested his participation from the profit sharing plan's trustee, the defendant Third National Bank and Trust Company, the trust officer, Wendall Hohn, in denying the request, explained that, although under a prior interpretation of the agreement the plaintiff would have qualified as a three-year participant entitling him to a share upon termination, a "reinterpretation" of the plan excluded the plaintiff from participation. In other words, the plaintiff was told that since he had not completed three full years as a participant (one not becoming a participant until the first anniversary date following one year's continuous employment as a salaried employee) he had no vested interest in the amount which was contributed to his account.

The trust officer indicated that only after the plaintiff made his demand, did the trustee seek legal advice which resulted in the "reinterpretation." Under the old interpretation, the plaintiff would have qualified as a three-year participant in the plan, whereas under the new interpretation, it was now necessary, since one could not become a participant until after the first anniversary date following 12 months continuous employment as a salaried employee, to, in effect, work four years in order to make the three years needed to have a vested interest in the accumulated participation so as to be able to withdraw a percentage upon termination.

(9) The "new interpretation" denying the plaintiff his share of participation, is the correct one under the terms of the written profit sharing plan entered into between the company and the trustee. (Article III:01—Any person employed on a full-time salary basis shall be eligible to become a participant as of the anniversary date on which he first meets all of the following requirements— (a) Must be continuously employed by the company for at least one year.) It differs, however, from the operation of the plan as explained to the plaintiff by Hal Wegman upon his becoming a salaried employee.

(10) The defendant introduced testimony from Wendall Hohn, trust officer of the corporate trustee, who indi-

cated that (based upon the correct interpretation of the written profit sharing plan) the plaintiff did not begin participation in the fund until September 30 of 1964 (the anniversary date following one year's continuous employment as a salaried employee); that his participation in the fund, as of September 30, 1963, was zero; that for the fiscal year ending with the anniversary date of September 30, 1964 (comprising the period of October 1, 1963, through September 30, 1964), the company allocated the sum of $1,082.42 to the plaintiff's account (the difference between that sum and the figure of $1,392.58 given as the value of his share on September 30, 1964, consisted of an increase in the account due to forfeitures from terminated participants and an increase in the bond and stock market). In other words, Mr. Hohn's testimony indicated that:

On September 30, 1963, the value of the plaintiff's participation was zero. Said value remained as zero until and through the date of September 29, 1964 (the day prior to the first aniversary date following 12 months continuous employment as a salaried employee). Not until September 30, 1964, was the contribution from the company and the allocation of forfeitures and increases in the bond and stock market made to the plaintiff's account, and not until that date—September 30, 1964—did the plaintiff have any participation in the trust. In other words, one is not a participant of the plan until the end of one full fiscal year (the anniversary date) from the date of his employment as a salaried employee.

(11) The plaintiff testified that he never questioned any of these notices from the trustee, including the first notice indicating that the value of his participation as of September 30, 1963, was zero, although he had been told he would receive, as of September 30, 1963, a portion of the contribution made to the plan.

(12) According to the terms of the Elano Corporation profit sharing plan, defendant's exhibit No. 1, Article IX:01, page 13, a salaried employee does not begin to earn a vested interest in his account until he has become a participant. As indicated above, one does not become a

participant until the conclusion of one full fiscal year (after the anniversary date) from the time he first becomes a salaried employee. In other words, the plaintiff, having become a participant as of September 30, 1964, would have completed one full year of said participation on September 30, 1965; two full years as of September 30, 1966; and since the plaintiff terminated his employment in May of 1967, he would have fallen some four and one-half months short of completing the necessary three full years as a participant in the plan. Since, under the express terms of the plan, one must complete three full years as a "participant" in order to have a vested interest in the amount contributed to his account allowing him to withdraw a percentage of same upon termination of employment, the plaintiff was not entitled to any payment or percentage of accumulated contribution.

(13) Wendall Hohn, the trust officer in charge of administrating the profit sharing plan, testified that, in certain instances, distributions were made to employees who terminated their services with the defendant corporation. Three of such employees were paid *10% in excess* of the amount they were entitled to receive when they terminated their employment. These distributions were made in error in that the trustee granted said employees one full year's participation (contrary to the terms of the written agreement) before they had been full time salaried employees for more than one full fiscal year. Four other employees, two of which terminated their employment in December of 1959 and two others who terminated in February of 1968 and March of 1969, respectively, were paid in accordance with the vesting schedule of the plan as outlined above. Two of the employees who were paid in error terminated their employment with the corporation in December of 1962 and June of 1964, at or about the time the plaintiff became a salaried employee. One Harold Funkhouser testified that he was a salaried employee of the defendant for some three and a half years (some two months less than was the plaintiff) and yet received his full share or 30% of his accumulated participation.

In other words, Mr. Hohn testified that at the beginning of the plan, terminated employees were paid, or not paid, their contribution in accordance with the written terms of that plan. For a period of several years, distributions were made to terminated employees in error, in that they received 10% in excess of what they should have had had the written plan been followed to the letter. Upon demand by Mr. Vocke for his 30% share of the participation, a "reinterpretation" was entered into, and the distributions are now being made in accordance with the written profit sharing plan.

There is no showing that the plaintiff knew, while he was still an employee of the defendant corporation, of these distributions which later turned out to be "in error."

(14) It was agreed by Mr. Hohn that under the interpretation of the agreement existing at the time the aforesaid employees were paid 10% in excess of their entitlement, the plaintiff would have had a vested interest in the plan and he would have received the amount prayed for. The "reinterpretation," having been made, the defendant now denies the plaintiff's right to a vested interest and to withdraw any of his accumulated participation.

(15) Article XVII, Section 17.01, page 24, of the written profit sharing plan, provides as follows:

"The plan hereby created is purely voluntary on the part of the company and the company may change, suspend, or discontinue payments hereunder at any time or from time to time as the company may decide. Neither the establishment of the plan, nor any modification thereof shall be construed as giving any person whomsoever any legal or equitable right as against the company or trustee. Nothing contained in this agreement shall be construed or interpreted as giving any employee the right to be retained in the service of the company."

(16) The profit sharing plan also provides for the amendment and termination of the plan in Article XV, page 23: "Any amendment must be made by the Board of Directors of the Company, as evidenced by the amendments dated September 28, 1956, and September 28, 1962,

attached to the plan. Any amendment in the terms of the written agreement must be authorized by the Board of Directors."

(17) Although the plaintiff did testify that he understood his compensation as a salaried employee consisted of his salary plus his interest in the profit sharing plan, there was no evidence submitted that the plaintiff was induced to accept employment as a salaried employee because of this factor, or that he did forego seeking and accepting other employment because of the existence of this plan or any interest he might have had therein. Nor was there any showing that the plaintiff had incurred a loss by working at a lower salary in the expectation of receiving the profit sharing benefits. The evidence tended to show that the plaintiff received a salary increase each and every year he remained with the defendant-employer as a salaried employee.

(18) Since the plaintiff contends he was a participant for the necessary three years, having commenced participation on September 30, 1963, based upon the alleged oral agreement that by becoming a salaried employee in July of 1963, he would receive one full year's participation in the plan as of the fiscal year ending September 30, 1963, he asks for payment or the right of withdrawal of 30% of the accumulated share value, or $1,036.12.

B. The Issues

The aforementioned facts raise a myriad of legal issues, all of which must be met and answered in order to reach the ultimate question of whether or not the plaintiff is entitled to a share of his "accumulated participation" in the corporation's profit sharing plan, to wit:

(1) Is said written profit sharing plan an enforceable contract so that the plaintiff-employee has *any* legal enforceable rights thereunder or is the defendant-employer's undertaking entirely voluntary, making the benefits thereunder mere gratuities which cannot be legally enforced by the plaintiff-employee in a court of law.

(2) If it is held that the profit sharing plan is a legally enforceable contract, enforceable by the plaintiff-employee

in a court of law, the question becomes as to which of the two agreements takes precedence and applies in the case at Bar—The *written* profit sharing plan entered into between the corporate defendant and the trustee of the plan, the defendant, Third National Bank and Trust Company, which the defendant never saw and under which terms he would not be eligible, since he had not been a "participant" for three years, for a vested share of his accumulated participation upon termination *or* the *oral* and *erroneous explanation* of that profit sharing plan as explained to the plaintiff by a vice-president and general manager of the defendant corporation, under which explanation plaintiff would have qualified for a vested share as a three-year participant in the plan and under which explanation or interpretation the trustee paid several of the defendant's employees 10% in excess of the amount to which they were entitled?

C. The Decision

1. *The written agreement between the Elano Corporation and The Third National Bank and Trust Company, as trustee of the profit sharing plan, dated September 28, 1956, is a valid and binding contract made for the benefit of third persons who can enforce that contract in a court of law, to wit, employees of the corporation who qualify for vested shares as a participant.*

At first reading, it would appear that the plan specifically rules itself out of the category of a binding contract for the benefit of third person employees:

Article XVII:01—"The plan hereby created is purely voluntary on the part of the company and the company may change, suspend or discontinue payments hereunder at any time or from time to time as the company may decide. Neither the establishment of the plan, nor any modification thereof, shall be construed as giving any person whomsoever any legal or equitable right as against the company or trustee. Nothing contained in this agreement shall be construed or interpreted as giving any employee the right to be retained in the service of the company."

However, the majority rule, followed by Ohio, holds

that the employee has legally enforceable rights under such a general bonus or profit sharing plan as herein involved. Ohio rejects the contention that the employer's undertaking is entirely voluntary and the benefits mere gratuities which may be refused. The Ohio courts hold that general bonus or profit sharing plans give rise to a contract, taking the view that the plan embodied an offer on the employer's part to pay a bonus or to share profits in consideration of the employee's remaining in the employment and rendering service for a *specified period of time or until a specified event,* although hired for an indefinite period. 81 A. L. R. 2d 1070-4; 79-84 A. L. R. 2d L. C. S. 211-12; *Parish and Brigham Corporation* v. *Jackson* (1921), 16 Ohio App. 51; *Montgomery Ward & Co.* v. *Smith* (1931), 12 Ohio Law Abs. 28; *Harding* v. *Montgomery Ward Co.* (1944), 41 Ohio Law Abs. 243.

The crucial fact to note under this majority rule is that the profit sharing agreement, such as the one at issue herein, does not become a binding contract so as to be legally enforceable by the employee against his employer *until* the employee has remained in the employer's employment for a specified time or until a specified event. The specified time or specified event, in the plan at issue, is the vesting of the plan in the employee three years *after* commencement of participation; participation not commencing, under the specific terms of the plan, until the first aniversary date following one year of continuous employment as a salaried employee. Service for the specified period or until the specified event is the consideration required to flow from the employee to the employer to make the contract a binding one. Up until that specified time or specified event, no contract exists. The document represents merely an offer on the part of the company, an executory contract, which is not accepted by the employee's becoming employed but rather which can be accepted only by the employee's remaining employed for the specified time or until the specified event, to wit. the expiration of three years employment after the commencement of participation which participation cannot, under

the specific wording of the contract, commence until the first anniversary date following one year of continuous employment as a salaried employee.

The majority of states have held, along with the Ohio courts, that an employee is not entitled to share in the proceeds of the plan where he leaves his employment voluntarily (as herein) prior to the "vesting date" or the date fixed by the contract as the date on which the bonus would be paid or the date upon which eligibility for the bonus would be determined among existing employees. 81 A. L. R. 2d 1082-4:

A. *Harding* v. *Montgomery Ward Co., supra.* a case from our own Second District Court of Appeals which held that where a contract of employment was subject to termination by either side without notice and the contract provided for a yearly bonus which was to be forfeited for the entire year if the contract was terminated during the year and the employee was discharged, the employee had no legally enforceable right under the contract, the employment having terminated within the one-year period of time necessary to "vest" the bonus in him or to constitute an acceptance of the contract by virtue of his having continued in the employer's employ for the specified period of time stated in the contract.

B. *Montgomery Ward & Co.* v. *Smith, supra,* in which an employee who was working from month to month on a fixed salary, who was promised a bonus for a year's work, could recover such bonus even though he terminated his employment soon after completion of the one year's employment, the court holding that the completion of the year's employment constituted an acceptance of or a vesting of the contract right in said employee.

C. *Parish and Brigham Corp.* v. *Jackson. supra,* in which a proposition made by a corporation to its employees to become effective at the beginning of the next year, whereby the wage for the next year was to be based upon a profit sharing plan, consisting of wages plus a readily computable bonus based upon the individual employee's production and efficiency, the bonus to be for-

feited if an employee voluntarily quit before the expiration of the year, the court held that an employee who was wrongfully discharged within that year would recover the bonus in an action against the company since it was the company's wrongful discharge, not the employee's voluntary termination, which prevented the acceptance of the contract by the employee's working out the year. The court inferred that had the employee voluntarily terminated within the year that the contract would not have been enforceable against the company, since the contract for the bonus specifically stated that no bonus would be paid or earned unless the employee remained in the company's employ for a specified period of time or specified event, to wit, one year.

Thus it is clear that under the terms of the written profit sharing plan, the contract herein, the plaintiff, not having worked the required three years after commencement of participation, but having rather remained in the company's employ for only two years and eight months after commencement of participation, has no right of recovery against the company under that contract.

2. *The employee has no legally enforceable rights under the so-called "oral agreement or oral contract" with the company. The terms of the written contract must prevail.*

The plaintiff claims that even though he is not entitled to participate under the terms of the written agreement, since he did not remain in the defendant-employer's employ for a period of three years following the commencement of participation on September 30, 1964, the first anniversary date following one year's employment as a salaried employee, he is still entitled to a share of his participation based upon the oral agreement or oral representation made by one of the corporate defendant's executives at the time he became employed as a salaried employee, that his participation would commence as of the first anniversary date following such employment (September 30, 1963). Since the plaintiff did not terminate his employment until three years and eight months after said date,

he seeks to enforce the oral agreement and recover his share of his participation.

There is no question that when the plaintiff became a salaried employee in July of 1963 he knew of the existence of the plan and that the plan was understood to be part of his salary or compensation; that the employee was to make no contributions to the plan and that the employer could, but was not obligated to, make a contribution from net profits ranging from zero to 15% of the participating employee's yearly salary. The plan was explained to him by one of the corporate officers, erroneously as it turned out, and three times during the course of his employment he received notices from the defendant-trustee as to the state of his share of participation in the fund. It is undisputed that the plaintiff never saw the written contract or had explained to him by the defendant-trustee exactly how the plan was to operate. His only knowledge of the plan came from the erroneous explanation by the corporate official as to when "participation" would commence and the initial "notice" from the defendant-trustee dated November 27, 1964, which gave the value of the plaintiff's share as of September 30, 1963, as "zero." This particular notice the plaintiff either ignored and paid no attention to or simply misunderstood.

A. *There was no enforceable oral contract between the parties as the written contract embodying the profit sharing plan takes precedence and the doctrine of promissory estoppel does not apply.*

1. *The prior written contract controls the relationship between the parties.*

It is clear that there existed no enforceable oral contract between the parties and that the written contract, embodying the complete terms of the profit sharing plan, binding upon all the parties, must take precedence.

In the case of *Harding* v. *Montgomery Ward & Co.*, *supra*, the court had occasion to consider a factual situation similar to the one at Bar in that a determination had to be made as to which of two agreements took precedence, a prior written contract, concerning a bonus agreement,

or a subsequent oral one concerning the same subject. The court held the prior written contract to be controlling:

"All of the evidence of the amount of work done by the store manager which he alleges he would not have performed except in the expectation of a bonus has no bearing upon the right to a bonus and the amount to be paid. That was provided for in the contract."

In the *Harding case, supra,* there was a standard employment manual in effect when the plaintiff was employed (analogous to the written profit sharing plan in existence when our plaintiff, Vocke, became a salaried employee). The plaintiff said he did not agree to this, he was not familiar with its terms and he did not voluntarily agree to comply with the same. The court concluded that the basis of the plaintiff's claim was the store manual which fixed and controlled the salary and bonus, despite the allegation by the plaintiff that he had an oral agreement to receive 8% of 85% of the net profits.

As with the plaintiff in the *Harding case,* so be it with Louis Vocke in the instant case. This court holds that the prior written contract embodying the complete terms of the profit sharing plan control completely the relationship of the parties to this case, the right of the plaintiff-employee to become a participant in the plan and the eligibility requirements (such as length of employment) that must be complied with before the plaintiff-employee obtains a vested right to a share of accumulated participation. In other words, the court holds that the basis of plaintiff-Vocke's claim is the written profit sharing plan. (Since it is clear that the terms of the written plan must prevail, pursuant to said binding contract, "any amendment in the terms of the written agreement must be authorized by the Board of Directors.") There is no indication that the parties felt they were proceding on a new contract. Both parties intended to proceed and thought they were proceding on the written contract.

2. *The doctrine of promissory estoppel does not apply to make a binding oral contract in the instant case.*

There are four recognized elements necessary for the

doctrine of promissory estoppel to apply so as to constitute a substitute for consideration in order to make a binding contract between the parties:

(1) A promise clear and unambiguous in its terms.

(2) Reliance by the party to whom the promise is made.

(3) His reliance must be both reasonable and foreseeable.

(4) The party asserting the estoppel must be injured by his reliance.

It is clear that, in the case at bar, element number 4 is not sustained by the facts, by the required preponderance of the evidence. The plaintiff, the party asserting that the defendant-employer is estopped to deny the validity of the oral contract, has not proven that he was injured by his reliance on his employer's representation. In fact, the opposite appears to be true. There is simply no evidence, let alone a preponderance, in the record to substantiate the plaintiff's claim that he was injured by such reliance. Let us examine the record.

True, the profit sharing plan was to be part of the employee's salary or compensation, but there is no indication that, when the plaintiff became a salaried employee, he took a pay reduction or worked for a reduced salary in order to make an "inkind" contribution into the plan. No contribution was to be made by the plaintiff, or any employee, either directly or by a deduction from the employee's salary in lieu of a direct contribution by the employee. All contributions were to be made by the employer from net profits. Rather than being injured by any reliance on what Wegman told him, the evidence indicates that the plaintiff, earning some $140.00 per week as an hourly paid employee, became a salaried employee in July of 1963 at a salary of $155.00 a week. Thus, instead of working for a reduced wage or lower salary in order to contribute to the plan, the plaintiff-employee found himself the recipient of a $15.00 a week pay increase. The evidence indicates, although the exact figures were not stated, that the plaintiff received an increase in salary each and

every year that he remained with the defendant-employer as a salaried employee.

There is no evidence whatsoever in the record that the plaintiff worked at a lower salary in the expectation of receiving benefits from the profit sharing plan, that he was induced to accept employment as a salaried employee because of the plan and as explained to him, or that he, in reliance on the alleged oral agreement that he would become a participant in the plan on September 30, 1963, was caused to forego seeking or refused any other employment which might have caused him to better himself. The crux of the matter is that, whether in reliance on what the company told him about the plan or not, the plaintiff bettered himself in every way by making the move from an hourly paid employee to a salaried employee.

The existence of promissory estoppel such as would estop or prevent the one against whom the estoppel is alleged from denying the validity of the contract is a question of fact, dependent by its very nature, upon the facts and circumstances of each case. The mere fact that on several occasions the defendant-trustee paid out sums in error based upon an incorrect interpretation of the written contract embodying the profit sharing plan does not, in and of itself, create a promissory estoppel in the instant case. The erroneous payment in no way counterbalances the cold facts that in the case at bar, our plaintiff simply was not, in any way shown on the record, injured by any reliance on Wegman's representation as to the terms of the written contract.

For that very reason, *each and every one* of the cases cited by the plaintiff, in support of his contention that there existed a valid and enforceable contract between the parties based upon the defendant-employer's oral representation, can be distinguished from the facts in the instant case:

1. *Parish and Brigham Corp.* v. *Jackson, supra*—the plaintiff voluntarily took a $20.00 per month reduction in pay in order to participate in the bonus or profit sharing plan and where the pay rate was expressly stated to be a

fixed sum plus a readily computable bonus or share of the profits.

2. *Feinberg E. Pfeiffer Co.* (1959) (Missouri), 322 S. W. 2d 163—The plaintiff retired from her lucrative position in reliance upon the defendant's promise to pay her a pension for life. The pension was not paid.

3. *Hook* v. *Southern California Waiters Alliance*, 158 Cal. App. 2d 556—involving retirement benefits which the local union assured the plaintiff he would receive if he would remain with the union and refuse an offer of outside employment. The union stopped payment of the benefits.

In each case cited by the plaintiff, it is crystal clear that, unlike the case at Bar, the complaining party not only relied upon the defendant's promise, but was seriously and obviously injured by such reliance (foregoing outside employment, resigning a lucrative position, etc.).

The existence of promissory estoppel being a question of fact for the trier of fact, this court holds that the plaintiff has failed to sustain his burden of proof that a valid and binding oral contract existed between the parties or should be held to exist by virtue of the theory of promissory estoppel.

B. *There was no waiver of any of the terms of the written contract.*

Since we have held that there was no new binding oral contract entered into between the plaintiff and the corporate defendant which the plaintiff can enforce, the plaintiff must, perforce, rely upon the theory that the critical terms of the written contract as to commencement of participation were waived.

The plaintiff claims that the conduct of both defendants constituted a waiver of the terms of the written profit sharing plan as it applied to this plaintiff—on the part of the defendant-trustee, by virtue of its having erroneously paid out, on several occasions, to terminated employees 10% more than the amount called for by the written contract (under an interpretation by which the plaintiff would have been entitled to a share of his participation) and on the part of the defendant-employer, by virtue of the alleged

oral contract between the plaintiff and the corporate official.

As a basic premise, there can be no recovery upon a contract which is not substantially performed (the plaintiff not having participated for the required number of years) where the failure to perform is not excused by a waiver. Waiver is, by definition, a voluntary relinquishment of a known right, an act showing impliedly or expressly that the party agreed to rely on something other than the strict letter of its agreement. *Boos* v. *Ewing*, 71 Ohio 500 (Some outward act or declaration by the party waiving must be shown); *American National Ins. Co.* v. *Euce*, 2 Ohio App. 299 ("A waiver is an intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right."). In that case, an insurance company accepted a proof of loss form more than 60 days after the loss, even though the insurance contract stated that such proof of loss form must be filed within 60 days of loss. A waiver of any of the terms of the contract may be either by subsequent contract, written or oral, or by the acts and conduct of the parties. *Ohio Farmers Ins. Co.* v. *Cochran*, 104 Ohio St. 427 (an insurance company accepted a proof of loss form more than 60 days after the loss even though the insurance contract stated that such forms must be filed within 60 days of the insurable loss); *Individual Damp Wash Laundry Co.* v. *Meyers*, 10 O. O. 577, 26 Ohio Law Abs. 142. A waiver may be expressed or implied from conduct, *List and Son Co.* v. *Chase*, 80 Ohio St. 42, but ordinarily a party will not be held to waive a material term of the contract unless he *intends and consents* to do so. A waiver may relieve the other party from the necessity of performing a condition. *Bates* v. *Benninger*, 13 Ohio Dec. Rep. 1073.

A valid agreement to modify a contract operates as a waiver of the terms of the contract. *Ohio Farmers Ins. Co.* v. *Cochran, supra*, but courts move slowly and carefully when the claim is made that a party has waived the terms of a written contract and agreed to different terms by parol, as it amounts to an oral modification of a written contract,

*White Co.* v. *Canton Transportation Co.*, 131 Ohio St. 190, 5 O. O. 548.

Whether or not there has been a waiver of all or certain terms of a prior written agreement is a question of fact for the trier of fact. The burden of proof of establishing waiver is upon the party relying on the waiver. That burden of proof must be sustained by a preponderance of the evidence. *Ohio Farmers Ins. Co.* v. *Cochran, supra.* In the case at Bar, it is the court's opinion and finding, having already determined that no new contract was entered into between the plaintiff and the defendant-corporation, that the defendant-employer did not knowingly consent or intend, either expressly or by implication, to modify or waive that portion of the profit sharing plan embodied in the written contract which makes employment for three years following the first anniversary date after one year's continuous employment as a salaried employee a condition precedent for an employee's being allowed to have such a vested interest in the plan as to allow him to withdraw a portion of his accumulated participation upon termination of employment.

Indeed, the evidence is all to the contrary. Far from the defendant-employer's voluntary and intentional relinquishment of a known right, it appears that, at worst, the defendant-employer can be faulted for having misinterpreted or made a mistake concerning the terms of the binding written agreement. A mistake or misinterpretation on the part of one of the parties will not constitute a waiver on his part, of a material segment of a written contract. *Oster* v. *Columbian National Fire Ins. Co.* (1929), 7 Ohio Law Abs. 570—the deprivation or want of knowledge by one party to a contract as to the terms of the same is not a basis or foundation for waiver, because of the proposition of law that, in the absence of fraud, both parties to an instrument of writing are equally charged with knowledge of the terms of the instrument they executed. A mistake of a material nature is a defense to specific performance even if, as was not true in the instant case, a binding oral contract had been entered into between the defendant-employer and the plaintiff-employee. 37 Ohio Jurisprudence 2d,

Mistake, Section 5, Mistake of Fact Generally, Page 83. There is no evidence or indication that the defendant-employer intentionally and voluntarily consented to waive this right of the employer to require, as a condition precedent to the plaintiff's obtaining a vested interest or a right to a share of his participation, that plaintiff be employed as a salaried employee for a period of three years following the first anniversary date after one year's continuous employment as a salaried employee. Rather, the evidence seems clear that the defendant-employer was proceeding on a misapprehension, misunderstanding or mistake as to exactly what the eligibility criteria were for "participation." Such a mistake will not constitute a waiver of the express terms of the written contract.

In addition, the notices sent the plaintiff, by the defendant-trustee, the first of which (mailed on November 27, 1964, some 16 months after commencement of work as a salaried employee) clearly indicated that the value of his participation as of September 30, 1963, was "zero," constitute well nigh definite evidence that the defendants did not intend to waive this particular requirement of the written contract. The fact that the plaintiff did not understand this to be so is immaterial. The fact is that said notice is highly probative evidence that the defendant did not intend to waive this material portion of the contract.

When the plaintiff-employee had his meeting with Wegman, the defendant-employer's executive, and when the plan was discussed, there was nothing in the conversation with reference to the beginning of participation under the plan that would lead anybody to believe that the defendant-employer was, while making specific reference to the written contract, waiving or modifying or substituting new participation requirements for those contained in the written plan. Rather, the conversation as a whole goes to substantiate the conclusion that Wegman was simply in error, not that he intended to substitute new criteria for the old.

The existence of waiver, being a question of fact for the jury or court sitting as a trier of fact, depends upon the facts and circumstances of each individual case. The fact

that the defendant-trustee, on several occasions, paid out sums under the improper interpretation in excess of what the written contract called for, may, *under the facts and circumstances of those cases*, constitute a waiver or modification of the written contract. As far as the case at Bar is concerned, the erroneous payment in those cases amounts to evidence which might, were it not overwhelmed by evidence to the contrary, tend to convince the court that a waiver has taken place. In the instant case, the plaintiff has failed to sustain his burden of proof on the question of waiver by a preponderance of the evidence.

Therefore, since the plaintiff-employee has no legally enforceable rights under the so-called oral agreement with the company, it is clear that he must look to the terms of the written profit sharing plan executed by and between the corporate-defendant and the trustee-defendant for any benefits to which he might be entitled. Since, under the express terms of that agreement, the plaintiff-employee cannot recover as he did not remain in the defendant-employer's employ for a length of time sufficient to have three year's continuous participation, as that term is defined in the contract, it is clear that the court's decision must be in favor of the defendants.

Wherefore, final judgment is entered in favor of the defendants.

*Judgment for defendants.*