933 F.2d 1009
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL COIN LAUNDRY, INC., Plaintiff-Appellant,
v.
SOLON AUTOMATED SERVICES, INC., Defendant-Appellee.
 No. 90-3883.
 United States Court of Appeals, Sixth Circuit.
 May 28, 1991.
 
 Before KEITH and MILBURN, Circuit Judges, and HILLMAN, District Judge*.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant National Coin Laundry, Inc. ("National") appeals the summary judgment awarded to defendant-appellee Solon Automated Services, Inc. ("Solon") in this diversity action for breach of contract. For the reasons that follow, we affirm.
 
 I.
 
 2
 National brought this action for breach of contract when Solon refused to sell its Ohio coin laundry operations to National. Both companies are competitors in the business of operating coin laundries, and, when National learned that Solon might be interested in selling its entire Ohio operation, it opened negotiations to buy Solon's business. In order to protect itself during the discussion phase of the transaction, Solon required National's president, Steve Close, to sign an "evaluation" letter, dated March 23, 1989, which provided that "any negotiations relating to the possible transaction shall not constitute a contract, and that the parties shall not be legally bound ... until they execute a formal and definitive agreement...." J.A. at 24. National was also told through its attorneys that other parties were interested in purchasing Solon's operation and that "the first person that puts the money on the table ..." would get the deal. J.A. at 204.
 
 
 3
 The parties pursued their negotiations and eventually agreed on the price of $535 per machine. A draft agreement containing that price and other terms of sale was prepared by Solon and sent to National on June 6, 1989. More discussions followed to settle the details of the contract, and on June 20, 1989, the parties agreed to meet for a formal closing on June 27, 1989. On the afternoon before the closing was to take place, Solon advised National that it had sold its operation to a third party for a higher price.
 
 
 4
 National filed its action in state court, and it was removed to federal district court. Solon then moved for summary judgment. National filed an amended complaint, and Solon withdrew its motion and filed a new motion for summary judgment. The district court granted summary judgment to defendant Solon, holding that National's action was barred by Ohio's statutes of frauds, Ohio Rev.Code Secs. 1302.04 and 1335.05, and that the doctrines of promissory and equitable estoppel did not take the case out of either statute of frauds. This timely appeal followed.
 
 
 5
 The principal issues in this case are (1) whether the parties entered into a written and signed agreement that comports with Ohio's statutes of frauds, and (2) if not, whether the doctrines of promissory or equitable estoppel are applicable to this case so as to take it out of the statutes of frauds. The appellant has also attempted to raise an issue of the trial court's having erred "in determining the sufficiency of detrimental reliance as a matter of law."
 
 II.
 A.
 
 6
 Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A district court's grant of summary judgment is reviewed de novo. Pinney Dock and Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988). In its review, this court must view all the facts and inferences drawn therefrom in the light most favorable to the nonmoving party. 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987). A district court's determinations of state law are also reviewed de novo. Salve Regina College v. Russell, --- U.S. ----, 59 U.S.L.W. 4219 (U.S. Mar. 20, 1991) (No. 89-1629).
 
 
 7
 When a motion for summary judgment has been filed, the moving party carries the initial burden of showing that no genuine issue of material fact exists. In the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings, but must come forward with some probative evidence to support its claim. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); 60 Ivy Street Corp., 822 F.2d at 1435. As is provided in Federal Rule of Civil Procedure 56(e):
 
 
 8
 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
 
 
 9
 This means that summary judgment is appropriate against a party
 
 
 10
 who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.
 
 
 11
 Celotex Corp. v. Catrett, 477 U.S. at 322-23.
 
 B.
 
 12
 National argues that certain writings it offered showed that the statutes of frauds should not have been applied in this case because the writings were the equivalent of a written and signed contract. After the March 23, 1989, "evaluation" letter in which National's president, Steve Close, agreed that no contract would exist until the parties executed "a formal and definitive agreement," the parties negotiated toward a final agreement and exchanged some written materials. Among these were an unsigned draft agreement and a "fax cover letter" telefaxed by Solon to National on June 6, 1989. The draft agreement was unsigned by any representative of Solon, and there was no signature on the "fax cover letter," only the printed name of Gerald Willis, one of Solon's officers, to identify the sender. J.A. at 97-116.
 
 
 13
 Under Ohio law, " '[s]igned' includes any symbol executed or adopted by a party with present intention to authenticate a writing." Ohio Rev.Code Sec. 1301.01(MM). The identification of Willis as the sender does not authenticate the unsigned draft agreement, and an examination of these two documents is sufficient to confirm the district court's judgment that there is no genuine issue of a signed writing raised by these documents.
 
 
 14
 Appellant also argues that certain notes on a scratch pad made by Solon's representative, Gerald Willis, during the course of a telephone conversation with Steve Close, bore the initials "CRB," for C. Richard Bergner, Solon's president. Solon points out, however, that these notes were for internal use only and would never have been seen by National had they not been subpoenaed in connection with a deposition. Brief for Appellee at 15. The district court concluded that Willis' notes did not amount to a signed writing sufficient to satisfy the Ohio statutes of frauds. An examination of these notes is sufficient to confirm this. See J.A. at 96. In light of Steve Close's admission that no written agreement was ever signed by either party, J.A. at 269, the district court was correct in concluding that no genuine issue of material fact existed as to the sufficiency of the proffered writings as a signed contract, that those writings did not amount to a signed contract, and that as a matter of law Ohio's statutes of frauds applied.
 
 C.
 
 15
 Ohio has two statutes of frauds that could conceivably apply to this case. Its general statute of frauds provides:
 
 
 16
 No action shall be brought whereby to charge the defendant ... upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them ... unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith....
 
 
 17
 Ohio Rev.Code Sec. 1335.05.
 
 
 18
 Ohio also has a special statute of frauds governing sales of goods which is borrowed from section 2-201 of the Uniform Commercial Code. It states:
 
 
 19
 (A) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought....
 
 
 20
 .............................................................
 
 
 21
 ...................
 
 
 22
 * * *
 
 
 23
 (C) A contract which does not satisfy the requirements of division (A) of this section but which is valid in other respects is enforceable:
 
 
 24
 .............................................................
 
 
 25
 ...................
 
 
 26
 * * *
 
 
 27
 (2) if the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted....
 
 
 28
 Ohio Rev.Code Sec. 1302.04.
 
 
 29
 The contract contemplated by the parties in this case involved the sales of coin-operated washers and dryers together with the leases on the property where those machines were installed.[1] Thus the contract provided for the sale of goods and the sale of interests in or concerning lands, tenements, and hereditaments, and as such it could fall within the provisions of both the statutes of frauds.
 
 
 30
 There is very little Ohio authority to give guidance as to which statute of frauds should be applied under circumstances where a contract is to involve both realty and personalty, but in R. Renaissance, Inc. v. Rohm and Haas Company, 674 F.Supp. 591 (S.D.Ohio 1987), the court held that the statutes applied according to whether the proffered contract was predominantly for the sale of goods or predominantly for one of the purposes mentioned in Ohio Rev.Code Sec. 1335.05, such as the sale of leaseholds. See Allied Indust. Serv. Corp. v. Kasle Iron & Metals, Inc., 62 Ohio App.2d 144, 405 N.E.2d 307, 309-10 (1977) (where contract is for sale of goods and services, the predominant factor and purpose of the contract determines which statute of frauds applies.). Under this test, it appears that the proposed contract in this case was predominantly for a sale of leases. National's president, Steve Close, conceded as much in his deposition when, having been asked whether the leases or the equipment were the "more important" elements in the contract, he answered, "Well, they're both pretty tied right to each other, but leases are because I can buy all the equipment I want. But leases it's difficult to buy (sic)...." J.A. at 293. He went on to testify that the equipment purchased was less important because he could buy machines direct from the factory and did not need to buy them from Solon. J.A. at 294.
 
 
 31
 In describing how he made his earliest overture to Solon, Close gave the following testimony:
 
 
 32
 Q. How did you first become aware that Solon was interested in selling at least a portion of its business?
 
 
 33
 A. I believe I called them, and this was very approximate, well actually, it goes way back. I met Dick Bergner, I believe, at the 1987 annual convention, and I spoke to him at that time. And I said, if you are ever interested in selling any of your locations in the Midwest, I'd be interested in purchasing them.
 
 
 34
 Q. Okay. And what did you mean by location?
 
 
 35
 A. A lease office, a territory.
 
 
 36
 J.A. at 222-23. From these statements and from the documents of record in the case, it is apparent that the transaction contemplated by the parties was "predominantly" a sale of leaseholds, and, therefore, Ohio Rev.Code Sec. 1335.05 was the appropriate statute of frauds to apply.
 
 
 37
 National argues that the negotiating process somehow led National to the belief that a formal contract would be executed, and, therefore, the doctrines of promissory and equitable estoppel bar Solon from relying on Ohio Rev.Code Sec. 1335.05. The doctrine of promissory estoppel, however, is not available to Solon in this case, because in Seale v. Citizens Savings & Loan Association, 806 F.2d 99, 102 (6th Cir.1986), this court held that "[a]lthough the Ohio courts have never addressed this issue, we are persuaded that they would not apply the doctrine of promissory estoppel to statute of frauds cases involving real estate." No Ohio court has repudiated Seale, but at least one Ohio court has approved it in an unreported decision. Leesburg Fed. Sav. & Loan Co. v. Dunlap, No. 658, (Ohio Ct.App. Mar. 28, 1988) (1988 WL 35791). The district court was, therefore, correct in holding itself bound by Seale and in deciding that National could not escape the operation of section 1335.05 as a matter of law on its theory of promissory estoppel.
 
 
 38
 National also attempts to rely on the doctrine of equitable estoppel to take this case out of the statute of frauds. The elements of this doctrine are set out in First Federal Savings & Loan Ass'n v. Perry's Landing, Inc., 11 Ohio App.3d 135, ----, 463 N.E.2d 636, 648 (1983), as follows:
 
 
 39
 First, there must be something in the nature of a representation by words, acts, or silence. The representation must be factual, not promissory, or else the elements and analysis appropriate to a promissory estoppel context may apply.... Second, the representation must communicate some fact or state of affairs in a misleading way. Third, the representation must induce actual reliance by the second party, and such reliance must be reasonable under the circumstances and made in good faith. Fourth, the relying party would suffer prejudice or pecuniary disadvantage if the party whose representation was relied upon were not estopped or precluded from asserting an otherwise valid right in contradiction to his earlier representation.
 
 
 40
 National has not met any of the first three requisites of the equitable estoppel doctrine. First, it has shown no factual representation, as distinguished from a promise, by Solon that Solon would consider itself bound by oral negotiations. Second, there is no evidence whatsoever that any such representation was made in a misleading way. Indeed, Solon took special pains to disabuse National of any notion that an oral contract could be fashioned when it had Close sign its "evaluation letter." Third, National has offered no evidence to show that its reliance, if any, was reasonable. In the face of the "evaluation letter," National would have to show how Solon in some way undercut its own insistence on a formal contract and agreed to be bound by something less. Since National has offered no evidence whatever to that effect, any reliance it placed on oral negotiations was unreasonable on its part. Its only explanation for its actions in the face of the "evaluation letter" was that Close failed to read the letter carefully enough.
 
 
 41
 Having offered no evidence to establish three of the four components of an equitable estoppel, National failed to create a genuine issue of material fact with respect to the applicability of the equitable estoppel doctrine. Therefore, the district court was correct in holding that National could not prevail upon the doctrine as a matter of law.
 
 D.
 
 42
 Although we believe that this case should be governed by Ohio's general statute of frauds, Ohio Rev.Code Sec. 1335.05, which specifically controls sales of interests in or concerning real estate, National argued, and the district court considered, the applicability of Ohio Rev.Code Sec. 1302.04, the special statute of frauds dealing with sales of goods. National contended that only section 1302.04 could apply to this case and that the exceptions mentioned in section 1302.04(C)(2), (C)(3) take this case out of section 1302.04 altogether.
 
 
 43
 Section 1302.04(C)(2) provides that a contract which does not satisfy the signed writing requirement of the statute may be enforceable "if the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract for sale was made...." Because both Gerald Willis and C. Richard Bergner admitted in their depositions that the parties had arrived at the price of $535 per machine, National contends that they have admitted that a contract was made.
 
 
 44
 National misconstrues section 1302.04(C)(2). Admitting that a price term has been agreed upon is not the same thing as admitting that a multi-term contract has been entered into. In order to arrive at complicated business contracts, parties must often negotiate through a long series of terms. To hold that an admitted agreement on the first term binds the parties to the whole potential contract would take virtually every business contract out of the statute of frauds, effectively nullifying the statute and making business negotiations impossibly dangerous. The district court found that the testimony of Willis and Bergner concerning the price per machine was not a judicial admission that a contract had been made and correctly ruled that National could not prevail on this exception as a matter of law.
 
 
 45
 National also argues that the exception stated in section 1302.04(C)(3) took this case out of section 1302.04. This exception provides that a contract otherwise invalid under this statute of frauds may be enforceable "with respect to goods for which payment has been made and accepted." National relies on language in Official Comment No. 2 which states that "[r]eceipt and acceptance either of goods or of the price constitutes an unambiguous overt admission by both parties that a contract actually exists." However, there is no evidence that any part of the price was actually received or accepted. National misinterprets this language, arguing that it means agreement about the price. The statute, however, requires actual receipt and acceptance of price, not merely the agreement to a price term, before a contract will be taken out of the operation of the statute of frauds. The district court was correct in ruling that none of the exceptions to section 1302.04 were applicable to this case.
 
 
 46
 There is also the question of whether promissory or equitable estoppel prevent Solon from relying on section 1302.04 to bar National's action. For the reasons already stated above, National has failed to establish the necessary elements of an equitable estoppel, and this failure is fatal to its case under either statute of frauds.
 
 
 47
 As for the applicability of the doctrine of promissory estoppel to cases involving contracts for sales of goods, the district court extended Seale by holding that "[t]hose same reasons [in Seale ] would lead the Ohio Supreme Court similarly to conclude that promissory estoppel was unavailable in a sale of goods situation." J.A. at 92. In so ruling, however, the district court did not take Ohio Rev.Code Sec. 1301.03 into account. It provides in relevant part:
 
 
 48
 Unless displaced by the particular provisions of Chapters 1301., 1302., 1303., 1304., 1305., 1306., 1307., 1308, and 1309. of the Revised Code, the principles of law and equity, including ... estoppel ... shall supplement its provisions.
 
 
 49
 Ohio Rev.Code Sec. 1301.03.
 
 
 50
 Regardless of whether or not the district court's extension of Seale to sales of goods cases was correct in light of the foregoing statute, National offered no evidence of a clear and unambiguous promise, the cornerstone of promissory estoppel. In Kasuri v. St. Elizabeth Hospital Medical Center, 897 F.2d 845, 852 (6th Cir.1990), this court approved a trial court's instruction that, to support a claim of promissory estoppel under Ohio law, its proponents must show "a promise which is clear and unambiguous in its terms." This "clear and unambiguous" requirement is found in several Ohio cases defining the elements of promissory estoppel. Kiel v. Circuit Design Technology, Inc., 55 Ohio App.3d 63, 67, 562 N.E.2d 517, 521 (1988); Cohen & Co. v. Messina, 24 Ohio App.3d 22, 26, 492 N.E.2d 867, 872 (1985); Vocke v. Third Nat'l Bank & Trust Co., 28 Ohio Misc. 58, 267 N.E.2d 606, 615 (Ohio Mun.1971).
 
 
 51
 National's only evidence of a promise is found in Close's affidavit:
 
 
 52
 During this initial series of calls, Mr. Bergner advised that Solon was now interested in selling. I told Mr. Bergner that I was negotiating at that time to purchase another company in the State of Indiana and if I were to consider Solon, I would need to put the Indiana acquisition on hold. Bergner replied that he would prefer I do that as Solon wanted to move as quickly as possible. In reliance on Mr. Bergner's representation, I put the Indiana purchase on hold and began discussing the terms of National Coin's purchase of Solon.
 
 
 53
 J.A. at 118. We do not believe that any promise by Bergner can be sifted out of the foregoing language. In any event, whatever might have been promised is far from "clear and unambiguous" and thus fails to meet the chief requirement of the doctrine of promissory estoppel.
 
 
 54
 We may affirm for reasons other than those stated by the district court, even where summary judgment has been granted, provided that the nonmoving party has had the opportunity to address the deciding issue. Hines v. Joy Mfg. Co., 850 F.2d 1146, 1150 (6th Cir.1988); County of Oakland v. City of Berkley, 742 F.2d 289, 298 (6th Cir.1984). National advanced its theory of promissory estoppel in the district court, supported it with all the evidence it had, and argued it with force. It has done the same on appeal. We may therefore affirm the district court on the ground that there is no genuine issue of material fact concerning the existence of a crucial element on which National has the burden of proof; viz., a clear and unambiguous promise. Since there was no such promise, we hold as a matter of law that the promissory estoppel doctrine does not take the case out of section 1302.04.
 
 E.
 
 55
 Finally, National argues that the district court erred "in determining sufficiency of the detrimental reliance as a matter of law." The district court found that "National ... failed to present any evidence of detrimental reliance upon any oral representations allegedly made...." J.A. at 91. Because detrimental reliance is only one of the elements needed to establish a promissory or equitable estoppel, and because, for reasons already mentioned herein, neither of those doctrines is available to National, this court need not address the question of the detrimental reliance, if any, in this case.
 
 III.
 
 56
 There are no genuine issues of material fact with respect to whether the equitable or statutory exceptions proffered by National operate to take this case out of either of Ohio's two statutes of frauds. Accordingly, the district court's grant of summary judgment is AFFIRMED.
 
 
 
 *
 Honorable Douglas W. Hillman, Senior United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Many of the machines were installed in apartment complexes where the necessary space was leased. The leases were often recorded and sometimes extended for more than ten years. J.A. at 220-23